**In re CF & I FABRICATORS OF UTAH, INC. et al., Debtors.**

(CF & I Fabricators of Utah, Inc.); (Colorado & Utah Land Co.); (Kansas Metals Company); (Albuquerque Metals Company); (Pueblo Metals Company); (Denver Metals Company); (Pueblo Railroad Service Co.); (CF & I Fabricators of Colorado, Inc.); (CF & I Steel Corporation); and (The Colorado and Wyoming Railway Company).

**Bankruptcy Nos. 90B–6721 to 90B–6730.**

United States Bankruptcy Court, D. Utah, C.D.

Nov. 25, 1992.

See also 131 B.R. 474.

Steven J. McCardell, Stephen M. Tumblin, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, UT and Frank Cummings, Eunice L. Bumgardner, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., for debtors.

Michael W. Coriden, CF & I Steel Corp., Pueblo, CO, for CFI.

Weston L. Harris, Steven T. Waterman, Ray, Quinney & Nebeker, Salt Lake City, UT, and Joseph E. O'Leary, Scott A. Faust, Choate, Hall & Stewart, Boston, MA, for unsecured creditors committee.

David J. Jordan, U.S. Atty., Salt Lake City, UT, and Kirk C. Lusty, U.S. Dept. of Justice, Washington, D.C.

MEMORANDUM DECISION AND ORDER RELATING TO DEBTORS' OBJECTIONS, DATED 10/02/92, FOR DISALLOWANCE AND DETERMINATION OF PRIORITY OF CLAIMS OF THE INTERNAL REVENUE SERVICE

JUDITH 'A. BOULDEN, Bankruptcy Judge.

On November 7, 1990, these related steel production companies (Debtors) filed petitions under chapter 11, primarily in an attempt to reorganize in light of their inability to fund two defined benefit pension plans. The United States of America, Department of the Treasury, Internal Reve-

nue Service (IRS), filed proofs of claim[1] against each of the Debtors jointly and severally asserting priority tax claims under § 507(a)(7)(E) and (G) of the United States Bankruptcy Code or alternatively as administrative claims for "excise taxes" pursuant to 26 U.S.C. § 4971(a) and (b) (section 4971). The claims are based on the Debtors' failure to pay certain amounts due under their pension plans. Both the Debtors and the Official Unsecured Creditors Committee (Committee)[2] objected to the proofs of claim. The legal issues were presented to the court in a claims objection hearing on November 13, 1992.[3] Speedy resolution of the legal issues is critical. The Debtors' hopes for reorganization center upon the sale of portions of the Debtors' assets implemented through a proposed plan of reorganization. The prospective purchaser has established a schedule that requires resolution of these and other issues or its participation in the Debtors' reorganization will be withdrawn. If the court allows the status asserted by the IRS for its claims, it is unlikely that the Debtors will have sufficient funding to propose a feasible plan of reorganization. Because of the critical nature of the resolution of these core issues, the court issued a bench ruling at the hearing, but indicated that it would supplement the bench ruling with a written decision.

## FACTS

At the time of filing, the Debtors were sponsors of two pension plans that provided pension and pension-related benefits for employees and retirees. CF & I Steel Corporation (CF & I) was the administrator of those plans. These two pension plans were the Pension Plan of CF & I Steel Corporation and Certain Subsidiaries (the Master Plan) and the Non–Contributory Pension Plan of CF & I Steel Corporation as

Amended and Restated Effective January 1, 1989, (the Non–Contributory Plan). Under these pension plans, CF & I promised to provide fixed pension benefits calculated with reference to each employee's pay and years of service. CF & I was obligated to provide annual plan funding contributions based on the actuarial valuation of the benefits earned by its employees.

The Pension Benefit Guaranty Corporation (PBGC) is a wholly-owned United States government corporation established under § 4002 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1302, to administer the pension plan termination provision of Title IV of ERISA, 29 U.S.C. §§ 1302–1461. The PBGC is required to guarantee payment of non-forfeitable or vested benefits under terminated pension plans, subject to certain limitations. If the PBGC pays pension benefits pursuant to its guaranty under the terminated pension plans, the funds do not come from the United States treasury, but from insurance premiums paid by sponsors of ERISA qualified plans.

CF & I failed to make the minimum funding payment of $12,400,000 on the Master Plan for the year ending December 31, 1989. The payment should have accompanied CF & I's form 5330 annual report that the parties agree was due on September 15, 1990. On November 7, 1990, the Debtors filed petitions for reorganization under chapter 11 of the Bankruptcy Code. Since the date of filing, the Debtors have not made any continuing minimum funding payments to the pension plans attributable to services rendered by employees before the date of filing. The annual reports and minimum funding payments for the year ending December 31, 1990, of approximately $12,100,000, were due September 15, 1991. The Debtors assert the pension plans are pre-petition obligations, there-

---

**1.** The IRS filed an identical claim in each Debtor's case that will be referred to collectively as the proofs of claim.

**2.** The Committee has fully participated in arguing the issues in dispute here, and its argument generally tracks and supports the position of the Debtors. Where reference is made to the posi-

tion of the Debtors, the court acknowledges that the Committee's position is similar.

**3.** The Debtors have also filed an adversary proceeding involving much the same arguments presented here, but including a prayer for equitable subordination under 11 U.S.C. § 506(c) as additional relief.

fore, the Debtors did not make the minimum funding payments for 1990.[4]

The Debtors attempted to persuade the PBGC into terminating the Master Plan both before and after filing the chapter 11 petitions. It was not until March 19, 1992, that the PBGC instituted proceedings to terminate the Master Plan. The Non–Contributory Pension Plan has not been terminated. CF & I, on behalf of the Master Plan, consented to the termination and entered into a trusteeship agreement with the PBGC effective March 19, 1992, and the PBGC became the successor trustee of the Master Plan. The PBGC became liable for guaranteed benefits to plan participants.

### IRS CLAIMS

Under section 4971(a), the IRS imposes an immediate 10% "first tier" tax based on the accumulated funding deficiency if the employer fails to make the minimum funding contribution by the date when the employer's annual report is due (in this case reports for both plans were due on September 15, 1990). If the sponsoring employer does not thereafter correct the accumulated funding deficiency by making the required contribution to the applicable pension plan during the taxable period as defined in section 4971(c)(3), then section 4971(b) imposes an additional "second tier" tax on the employer equal to 100% of the amount of the accumulated funding deficiency.

On March 13, 1991, the IRS timely filed various proofs of claim asserting tax liability based on excise taxes pursuant to section 4971. The proofs of claim alternatively asserted secured or priority status for section 4971(a) liability for the 1989 plan year assessed January 21, 1991. They also included a claim indicating "examination liability unassessed" for the second tier excise tax for the 1989 plan year. The IRS audited the second tier tax for the plan year 1989, and issued a post-petition notice of deficiency to the Debtors for the 1989 second tier liability. The original proofs of claim made no reference to section 4971 liability for 1990, despite an assertion in the IRS memorandum to the contrary. The IRS audited the 1990 plan year and issued the appropriate notice letters to the Debtors on September 3, 1992. The proofs of claim indicate that the 1989 second tier and the 1990 first and second tier excise taxes remain unassessed.

The original proofs of claim filed by the IRS also included amounts for income taxes for 1983 and income taxes under audit for 1984 and 1985. The only amount indicated on the original proofs of claim regarding income tax liability for 1987, 1988, and 1989, was an amount owing of $.00 with an asterisk referring to an explanation in which the IRS asserted a "protective" claim.[5]

The IRS amended each of its proofs of claim on September 24, 1992, three weeks prior to the filing of the Debtors' disclosure statement, and after the claims bar date.

---

**4.** On March 13, 1991, the PBGC filed two proofs of claim against each of the Debtors in connection with the Master Plan. These claims fall into two general categories: (1) claims for unfunded benefit liabilities under the Master Plan (the Unfunded Benefit Claims) designed to reimburse the PBGC for at least a portion of the amounts that it must pay to pensioners from its own funds; and (2) claims for due and unpaid minimum funding contributions allegedly due and owing the Master Plan (the Minimum Contribution Claims). On July 31, 1992, after termination of the Master Plan, the PBGC amended its proofs of claims, increasing the amount of each of the ten Unfunded Benefit Claims to an estimated amount of $263,200,000 and the amount of each of the ten Minimum Contribution Claims to an estimated amount of $64,874,-511. The claims were filed variously as priority or administrative claims. The court has ruled

that the majority of the PBGC's claims are prepetition, unsecured claims, not entitled to priority or administrative payment status.

**5.** The original proofs of .claim contained the following language: "No income tax liability is shown for the tax years 85 through 89 for the consolidated group of corporations of which CF & I Steel Corporation was the parent corporation. The returns for those years report net operating losses for all years except 1987. The carryback and/or carryforward of losses from other years to 1987 eliminates the income tax liability shown for 1987. These returns have not been audited but could be audited in the future for the purpose of eliminating any net operating loss carryforward which the debtor might attempt to claim."

The amended proofs of claim declare that the 1989 tax claimed pursuant to section 4971(a) is a pre-petition priority tax liability and asserts that the Debtors must pay, in addition to the claims of the PBGC for the underlying funding payment of $12,400,000, the following amounts: [6]

| Plan Number[7] | 1989 10% First Tier section 4971(a) |
|---|---|
| 010 | $ 1,205,047.00 |
| 008 | $ 36,577.00 |

The amended proofs of claims state that the 1989 section 4971(b) and the 1990 section 4971(a) and (b) claims are post-petition tax liabilities entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(1)(B)(i) in the following amounts:

| Plan Number | 1990 10% first tier section 4971(a) |
|---|---|
| 010 | $ 2,508,154.70 |
| 008 | $ 54,258.80 |

| Plan number | 1989 100% second tier section 4971(b) |
|---|---|
| 010 | $12,050,472.00 |
| 008 | $ 308,966.00 |

| Plan number | 1990 100% second tier section 4971(b) |
|---|---|
| 010 | $25,081,547.00 |
| 008 | $ 542,588.10 |

Alternatively, if the court does not accord the claims post-petition administrative status, the IRS asserts the claims represent pre-petition priority taxes under 11 U.S.C. § 507(a)(7)(E) and (G). The amended IRS proofs of claim also seek income taxes and interest to the date of the petition of $265,910.62 due for the years 1987, 1988, and 1988 pursuant to an audit completed after the IRS filed the original proofs of claim.

On October 2, 1992, the Debtors filed objections to the IRS proofs of claim. The Debtors object to all the section 4971 excise tax claims asserted pursuant to 11 U.S.C. § 507(a)(7)(E) and argue that the claims are, in fact, penalties and must be disallowed. They also contend that the section 4971 excise tax claims are not pecuniary loss penalties related to a governmental claim under 11 U.S.C. § 507(a)(7)(G) and should be disallowed.[8] In addition, the

Debtors objected to the 1989 section 4971(b) second tier claims and the 1990 section 4971(a) and (b) claims. They maintain that as of the date of filing, the taxable period had not expired and that they are still able to avoid the 100% penalty by correcting the accumulated funding deficiency for 1989, but that they are prohibited from so doing except pursuant to a plan of reorganization or as directed by this Court. The Debtors expect the IRS to assert section 4971(a) and (b) claims against the Debtors for each year, *ad infinitum*, in which the Debtors are prohibited from making the minimum funding payments by virtue of the filing of these chapter 11 proceedings. The Debtors also argue that any priority claims filed by the IRS for section 4971(a) and (b) claims for 1990 are late filed and should be disallowed.

The Debtors also object to those portions of the amended claims that add pre-petition priority income tax liability for 1987, 1988, and 1989 as untimely filed. The IRS contends the 1987, 1988, and 1989 income tax liabilities were included in the initial timely filed claims by incorporating the protective language contained in the proofs of claim and that the claims filed after the bar date were merely amendments to cure defects in the previously filed claims.

### ISSUES

A. The proofs of claim represent exactions that are not excise taxes allowed priority payment pursuant to 11 U.S.C. § 507(a)(7)(E), and are not pecuniary loss penalties allowed priority payment pursuant to 11 U.S.C. § 507(a)(7)(G).

 The initial issue presented in resolving the Debtors' objections to the IRS's

---

**6.** The IRS has asserted general unsecured claims for late payment penalties and interest of $198,713 for failure to pay the 1989 10% first tier penalties under section 4971(a).

**7.** The IRS has designated the Master Plan as plan 010, and the Non–Contributory Plan as plan 008 in its proofs of claim.

**8.** The Debtors object to the classification of the 1989 first tier claims as administrative claims under 11 U.S.C. § 503, but is not apparent from the amended proofs of claim that the IRS asserted administrative status for these claims.

proofs of claim is to determine if the IRS's characterization of the claims as excise taxes is correct. The IRS describes its claims as excise taxes based, not unreasonably, on the caption of section 4971 that indicates "Subtitle D–Miscellaneous Excise Taxes." All parties, however, acknowledge that the legislative history indicates that the excise taxes created in section 4971 are, in reality, penalties imposed upon an employer to prevent an accumulated funding deficiency under a plan.[9] No argument has been advanced that these claims in fact compensate the United States for actual pecuniary loss. Payment by the PBGC of any non-forfeitable or vested benefits under terminated pension plans is from premiums collected from all ERISA qualified plan sponsors, and not by the United States from general revenue. Though the IRS acknowledges that legislative intent indicates the taxes imposed are penalties, it asserts this court may not look at the actual nature of the exaction, but must rely on the designation stated by Congress in the statute and may not re-characterize the IRS's classification of the excise taxes.

The IRS relies on the Sixth Circuit's reversal of the lower court in *In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055 (6th Cir.1991) *cert. denied sub nom, Krugliak v. United States*, — U.S. —, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992), as being directly on point and controlling in this case. *Mansfield* held that, since section 4971 was an existing federal excise tax at the time the Bankruptcy Code was enacted, Congress meant to include those exactions in the category Congress itself had previously

deemed to be federal excise taxes under 11 U.S.C. § 507(a)(7)(E). *Mansfield* held that courts should not employ any other test to determine if the section 4971 taxes are in fact excise taxes. *Mansfield* indicated that such deference would not be given, however, in cases involving state and local exactions. In those instances, a federal question arises, therefore a federal court may determine whether the state or local tax characterization is correct when applied to the Bankruptcy Code.

The Debtors invite this court to conclude that *Mansfield* is unnecessarily rigid and contrary to prior law. Instead, they argue that this court is empowered to look behind Congress' characterization of the tax and should instead employ a four part test to determine if the assessment is properly characterized as a tax.[10] The IRS agreed that if the court employed such a test it would not be able to sustain the position that the section 4971 excise taxes are not penalties because it could not meet the third prong of the *Lorber Industries* test. *In re Cassidy*, 126 B.R. 94, 96–8 (Bankr. D.Colo.1991); *In re Airlift Int'l., Inc.*, 120 B.R. 597, 601 (S.D.Fla.1990).

This issue should be viewed in the context of the Tenth Circuit's controlling instruction that courts should not interpret a statute so that the literal meaning of the words thwarts the obvious purpose of a statute. *State of Okla. ex. rel., Dept. of Human Serv. v. Weinberger*, 741 F.2d 290, 292 (10th Cir.1983). Even in *Mansfield*, the court acknowledged that there are "rare cases" in which the literal application of a statute will produce a result at odds

---

**9.** The legislative history indicates: "The bill also provides new and more effective *penalties* where employers fail to meet the funding standards ... This procedure, however, has proved to be defective since it does not directly *penalize* those responsible for the under-funding. For this reason, the bill places the obligation funding and the *penalty* for under-funding on the person on whom it belongs—namely, the employer." H.R.Rep. No. 807, 93rd Cong., 2nd Sess. 28 (1974), reprinted in 1974 U.S.C.C.A.N. 4670, 4694–95 (italics added).

**10.** In *County Sanitation Dist. No. 2 of Los Angeles County v. Lorber Industries of California, Inc. (In re Lorber Indus. of California, Inc.)*, 675 F.2d

1062, 1066 (9th Cir.1982), citing *Dungan v. Dept. of Agriculture, State of Cal.*, 332 F.2d 793 (9th Cir.1964), the Ninth Circuit approved the following four part test to determine the elements of whether a state charge can be afforded tax priority under the Bankruptcy Act:

1) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

2) Imposed by, or under authority of the legislature;

3) For public purposes, including the purpose of defraying expenses of government or undertakings authorized by it;

4) Under the police or taxing power of the state.

with the intent of the statute. *Mansfield,* 942 F.2d at 1059, citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Courts should also be circumspect in interpreting ERISA, or related provisions of the Internal Revenue Code, in a manner that alters or impairs the Bankruptcy Code.[11]

■ This court concludes that the label adopted by Congress in its characterization of these excise taxes is not controlling, especially where blind acceptance of the label would defeat the purpose of the Bankruptcy Code. *United States v. Unsecured Creditors Comm. of C-T of Va., Inc. (In re C-T of Va.),* 977 F.2d 137 (4th Cir.1992) (it is the purpose of the tax, not its name, that controls); *United States v. River Coal Co., Inc.,* 748 F.2d 1103, 1106 (6th Cir.1984) (fact that Congress labeled a reclamation charge a fee rather than a tax is not controlling); *In re Unified Control Sys., Inc., v. I.R.S. (In re Unified Control Sys., Inc.),* 586 F.2d 1036, 1037–38 (5th Cir.1978) (label placed upon an imposition in a revenue measure is not decisive in determining its character); *United Steelworkers of America, AFL–CIO–CLC v. PBGC (In re Wheeling–Pittsburgh Steel Corp.),* 103 B.R. 672, 693 (W.D.Penn.1989) (the mere label of an exaction as a tax will not govern its characterization for purposes of bankruptcy law); *Matter of Kline,* 403 F.Supp. 974, 977 (D.Md.1975) *aff'd.* 547 F.2d 823 (4th Cir.1977)(finding §§ 4941 and 4944 of the IRS Code to be penalties, court indicated the name given to the exaction by the legislature is not conclusive).[12]

■ This case presents one of those "rare cases" where the court should examine the characterization of the statute be-cause of the obvious inconsistencies that arise if the excise tax status if upheld. First, unlike *Mansfield,* the IRS's section 4971 claims are for both the first and the second tier taxes. This court previously found that the claims of the PBGC for the underlying obligation are, for the most part, pre-petition unsecured claims. To allow priority treatment for alleged tax claims based on pension funding deficiencies, when the pension plan's claims do not receive such treatment, would elevate the section 4971 claims to a status ahead of those claims. Second, such an interpretation would result in state and local taxes being subject to judicial scrutiny, but not federal taxes. The effect could be that state taxes would be treated differently or accorded different priority than federal taxes and the Bankruptcy Code does not contemplate such disparate treatment. Third, the payment of such large priority claims would defeat any attempt by the Debtors to reorganize, would prevent any return to creditors and would provide a windfall to the IRS. Fourth, such an interpretation would harm the parties that are intended to be protected by the pension plan that section 4971 seeks to enforce, because payment of section 4971 penalty claims would be at the expense of pre-petition unsecured creditors including pensioners. Fifth, allowance of the 1990 first and second tier claims and the 1989 second tier claims would penalize the Debtors for obeying the Bankruptcy Code. The Debtors complied with the Bankruptcy Code by not paying pre-petition debts outside a plan of reorganization. However, it is the Debtors' compliance with the Bankruptcy Code that results in the accrual of the section 4971 claims after the date of filing.[13]

---

**11.** ERISA § 514(d), 29 U.S.C. § 1144(d), indicates that in interpreting ERISA, "nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(c) of this title) or any rule or regulation issued under any such law."

**12.** *Mansfield* considered but rejected *Unified Control Systems, River Coal Co.* and *Kline,* considering them as wrongly decided because they blurred the distinction between a federal question involving a state statute and a characteriza-tion made by Congress. Each case, however, found additional equitable reasons for looking behind the label applied to a tax when considered in light of the purpose of the applicable statute.

**13.** In *In re Wheeling–Pittsburgh Steel Corp.* 103 B.R. 672, 694 (W.D.Pa.1989), the court found that the IRS's claims under section 4971 were penalty claims for bankruptcy purposes. Since Wheeling–Pittsburgh was forbidden from paying pre-petition plan contributions post-petition under the bankruptcy law, equitable consider-

Based upon the forgoing, the court finds that it is empowered, under the circumstances of this case, to look behind the characterization of the exaction set forth in the statute and focus on the actual nature of the claims. Based on its own independent application of the four pronged test advanced in *Lorber Industries*, the court finds the IRS has failed to meet the third prong of the test. The excise taxes are penalty claims, and that the penalty claims are not assessed as compensation for the government's actual pecuniary loss. Therefore, to the extent that the IRS's section 4971 claims for 1989 and 1990 are deemed to be pre-petition claims, they are not afforded priority status under § 507(a)(7)(E) or (G).

B. The section 4971 penalty claims are not entitled to administrative status under 11 U.S.C. § 503.

■ The Debtors object to the IRS's proofs of claim that assert post-petition administrative status for the penalty claims. The IRS argues that its 1989 and 1990 section 4971(b) claims all accrued post-petition because either the notice of deficiency was mailed or the date of assessment occurred post-petition creating administrative expenses.[14] Likewise the 1990 section 4971(a) liability arose as a result of the post-petition failure of the Debtors to pay the accumulated funding deficiency on September 15, 1991. The IRS's statement of the date these events transpired is correct, but the IRS's position ignores the effect the filing of the Debtors' chapter 11 petitions had on the underlying obligation.

The IRS declares that a tax is incurred by the estate on the date that the tax accrues. *See, e.g. In re O.P.M. Leasing Servs., Inc.*, 68 B.R. 979 (Bankr.S.D.N.Y. 1987); *accord Wheeling–Pittsburgh Steel Corp.*, 103 B.R. at 693. Because the IRS sent notice of deficiency for the 1989 and 1990 section 4971(b) claims post-petition, and because the IRS assessed the penalties post-petition,[15] the IRS argues the penalties were incurred as administrative expenses.

The difficulty with the IRS's approach is that it presumes that it assessed excise taxes instead of penalties, and that an obligation has been incurred by the Debtors post-petition in spite of the operation of the automatic stay. The Bankruptcy Code prevented payment of the pre-petition obligation that is the foundation of the IRS penalty claims. The operation of the automatic stay tolled the correction period so that the claims have not yet been incurred and remain contingent claims. Therefore, there are no taxes to which the penalties attach.

■ The bankruptcy filing prohibited the Debtors from making any payment on the underlying pre-petition obligation that is the basis for the penalty claims, except payment through a plan of reorganization or as ordered by the court. *Official Comm. of Equity Security Holders v. Mabey (In Re A.H. Robins Co.)*, 832 F.2d 299, 302 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988). Since the basis for the IRS's proofs of claim for these periods is the Debtors' compliance with the Bankruptcy Code, it would be inequitable to allow the claims. Any failure to make such contribution is pro-

ations dictated that the IRS's claims be disallowed so as not to punish the debtor's creditors.

**14.** The IRS argues that the section 4971(a) excise tax accrues as of the date eight and one-half months after the end of the plan year, or for 1989, on September 15, 1990. *See* Temp. Treas.Reg. § 11,412(c)–12(b). The IRS also takes the position that the section 4971(b) claims accrue as of the earlier of the date of mailing of a notice of deficiency with respect to the penalty imposed by section 4971(a) or the date of assessment of the tax if the funding deficiency has not been cured. Section 4971(a)(3)(A) and (B). In this case, both the

notice of deficiency and the date of assessment, if any, for the 1989 section 4971(b) and the 1990 section 4971(a) and (b) occurred post-petition.

**15.** IRS relies upon the District Court Rule of Bankruptcy Practice and Procedure, D.Utah 508, that indicates that the stay afforded by 11 U.S.C. § 362 is modified to allow the IRS to assess tax liabilities unless a party in interest objects and the court orders otherwise. This provision is of no comfort to the IRS because it allows for the assessment of taxes, not for the assessment of penalties such as the section 4971 claims asserted in this case.

tected under bankruptcy law and cannot be penalized by the IRS. *Wheeling–Pittsburgh Steel Corp.*, 103 B.R. at 693.

■ The penalty claims are also contingent because section 4971(b) provides that the claims do not arise unless the accumulated deficiency is not *corrected* within the taxable period. The correction period does not expire until at least ninety days after the date on which the IRS mails notice of deficiency for the 10% first tier penalty due under section 4971(a). Under section 4961(a), the correction period is extended for ninety days following the mailing of the notice of deficiency, and for any additional time beyond the ninety days during which "a deficiency cannot be assessed under section 6213(a)" of the Internal Revenue Code. 26 U.S.C. §§ 4961(a), 4963(e)(1). One such period is the period during which a debtor is prevented from filing a petition in the United States Tax Court, and for sixty days thereafter. Since 11 U.S.C. § 362(a)(8) precludes the commencement or continuation of a proceeding before the United States Tax Court, the correction period extends until sixty days after the conclusion of the bankruptcy proceeding. Therefore, the running of the correction period is tolled during the period in which the automatic stay is in effect and no 100% penalty may be assessed. *Wheeling–Pittsburgh Steel Corp.*, 103 B.R. at 695.

The 1989 plan year correction period was still open as of the date of filing of these petitions and remains open. The notice of deficiency for 1990 was issued while the automatic stay was in effect, therefore, the correction period cannot expire until 150 days after the date on which the stay expires. The Debtors argue that the term "correct" means to contribute to the pension plan the amount necessary to reduce the accumulated funding deficiency, as of the end of the plan year, to zero. The confirmation of a plan operates to discharge "all claims and interest of creditors," thus effectively reducing all claims to zero. 11 U.S.C. § 1141. The Debtors propose that the pre-petition claims related to the pension plans can be cured or corrected through their proposed plan. This

may be correct, but the proposed plan has not been confirmed and the court makes no determination at this time that such a provision would cure or correct the funding deficiency. The court reserves any ruling based upon this theory until the facts of the case support consideration of the argument.

■ The language of 11 U.S.C. § 503(b)(1)(C) grants administrative status to "any fine, penalty or reduction in credit *relating to a tax of a kind specified in subparagraph (B) of this paragraph.*" 11 U.S.C. § 503(b)(1)(C) (emphasis added). The logical interpretation of this language is that such penalty must relate to a tax allowed administrative status under 11 U.S.C. § 503(b). Though it may be argued that 11 U.S.C. § 503(b)(1)(C) includes penalties without the restriction that such penalties be compensation for actual pecuniary losses and may therefore include section 4971 penalties, these penalties do not relate to a tax. The Debtors are subject to section 4971 liability on the accumulated funding deficiency in the qualified plan resulting from failure to make minimum contributions to the plan rather than failure to pay any identifiable, separate, revenue producing tax. The only obligation related to the section 4971 penalty is the obligation owed by the Debtors to fund the pension plan, or upon termination of the plan, the obligation to pay any under-funding to the PBGC. The Debtors simply have no underlying obligation owing to the United States that can be characterized as a tax.

Based upon a consideration of all the foregoing factors, the court finds that the IRS's proofs of claim for 1989 section 4971(b) and for 1990 section 4971(a) and (b) are disallowed and expunged. *See, e.g., LTV Corp. v. IRS, (In re Chateaugay Corp.)*, 146 B.R. 626 (S.D.N.Y.1992). If the Debtors fail to confirm a plan that cures the accumulated funding deficiency, the IRS may be entitled to file an administrative claim and again assert administrative status for a portion of its proofs of claim. But a determination whether such claims may be allowed must await circumstances

different from those currently before the court.

C. The timeliness of the IRS proofs of claim raises issues of fact that must be resolved through an evidentiary hearing.

■ The third basis for the Debtors' objections to the proofs of claim is that a portion of the claims are untimely. The Debtors contend that the IRS should not be permitted to amend its proofs of claim to assert additional income tax liabilities for 1987, 1988 and 1989, or to assert new pre-petition section 4971 liabilities for 1990. The IRS argues that the protective language in the original proofs of claim clearly placed the 1985 through 1989 income tax liabilities in issue. The IRS reasons that the original proofs of claim may not have indicated the exact nature of the tax liability, but the Debtors were on notice that an income tax audit could be anticipated for those years. The IRS admits that there was no specific language in the original proofs of claim regarding the 1990 liability under section 4971 because the IRS viewed this liability as post-petition administrative liability. However, the IRS argues that its original proofs of claim did inform the Debtors of the general concept of placing these liabilities at issue. Nonetheless, the IRS claimed the 1990 excise taxes as priority pre-petition taxes as well as post-petition administrative taxes.

■ Although amendments to proofs of claim may be freely permitted "to cure a defect in the claim as originally filed," a creditor may not assert new claims after the bar date under the guise of amending its claim. In re Unioil, Inc., 962 F.2d 988, 992 (10th Cir.1992) (quoting LeaseAmerica Corp. v. Eckel, 710 F.2d 1470, 1473 (10th Cir.1983)). In Unioil, an individual creditor sought by motion to amend his proof of claim to identify a trust as the proper principal on whose behalf he was pursuing the claim. The court held that ordinarily an amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable, but a truly new claim should not be permitted. The court found that the original proof of claim at issue in that case was adequate and that its content was unaltered by the requested amendment. The court concluded that under the particular circumstances before it, the debtor was not prejudiced by the amendment because the amended proof of claim asserted the same substantive interest as the original proof of claim. Unioil, 962 F.2d at 993.

■ The IRS suggests that in Unioil, the Tenth Circuit took a more liberal approach to claims amendment than the traditional view. This court finds nothing in the Unioil decision that deviates from the traditional narrow standard that an amendment is permitted only where the creditor provided notice to the debtor of the existence, nature and amount of the claim and the creditor's intent to hold the estate liable. Walsh v. Lockhart Assocs., 339 F.2d 417 (5th Cir.), cert. denied, 380 U.S. 953, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965).

The IRS' original proofs of claim listed income tax liability for 1985–89 as $.00. The IRS reserved the right to audit the Debtors' returns for tax years 1985 through 1989 for the "purpose of eliminating any net operating loss carryforward which the debtor might attempt to claim." The IRS may have intended the Debtors to infer from this protective language notice that some amount of additional income tax liability may arise from the audit as a result of a change in calculating the loss carryforward which the Debtors were entitled to claim. The IRS admits that liability for "alternative minimum tax was not identified in the proof of claim but was clearly a possibility from the audit." IRS Response at p. 24. It does not appear from this anticipatory language that the IRS could maintain a claim for additional income tax liability if the audit produced evidence and the amended proofs of claim were based, for example, on the Debtors under-reported income or resulted from improper claims of other types of deductions.

Even if it were reasonable to make such an inference regarding the existence and

nature of the additional tax liability resulting from elimination of a loss carryforward, the amount of the additional tax liability could not be even remotely inferred from the original claim. It is unlikely that, on its face, an inference of increased tax liability without any indication of the amount of increase supplies sufficient notice to the Debtors to open the door for a later amendment intended merely to cure a defect. In this case, whether: (1) the original proofs of claim were sufficient to provide notice of the nature of the IRS's claim; (2) the Debtors made the correct inference from the original proofs of claim and; (3) the additional income tax liability actually resulted from adjustment to the amount of loss carryforward available to the Debtors is a factual determination that the court reserves for a later evidentiary proceeding.

D. The 1990 priority tax proofs of claim are untimely filed.

██ The IRS admits that the amendment to add the section 4971 liability for the Debtors' 1990 pension plan funding deficiency is problematic. It is clear from the original proofs of claim that the IRS attempted to protect its claim for section 4971 liability for the plan year ending December 31, 1989. The IRS reasons that the protective language regarding the 1989 excise tax put the Debtors on notice of the general concept of continuing liability for subsequent years. The IRS also relies on its characterization of section 4971 penalties as an administrative expense liability for its failure to anticipate and include the 1990 section 4971 liability on the original proofs of claim. The IRS claims priority status for the 1990 section 4971 claims as well as administrative expense status.

██ As the IRS noted, many courts summarily disallow amended claims to add additional tax periods for the same type of tax. *See, e.g., In re Butcher,* 74 B.R. 211 (Bankr.E.D.Tenn.1987). Other courts allow addition of another tax period of the same type of liability as an almost automatic amendment. *See, e.g., In re Bajac Const. Co.,* 100 B.R. 524 (Bankr.E.D.Cal.1989). Even under the most generous standard of

freely allowing amendments used by other courts outside the Tenth Circuit, if the 1990 liability was determined to be a pre-petition obligation, the amendment to add new and unspecified liability for the 1990 section 4971 penalties could not be allowed. In the present case, the reorganization is too far along and the various parties that have struggled over formulation of a plan would be adversely prejudiced if the court permitted such an amendment. Furthermore, applying the two-step analysis of *Unioil* leads to the same result. Even if it could be argued that the Debtors had notice of the existence and amount of the 1990 excise liability, such an amendment does much more that merely cure a defect, it creates a new claim. This new claim would insolubly delay and complicate the administration of this estate. Permitting a late-filed amendment for an additional tax period that triples the amount of the original claim this close to plan confirmation cannot be justified under these circumstances. The court will not exercise its discretion to allow such an amendment.

CONCLUSION

In accord with the above determination, the section 4971 assessments against the Debtors are in fact penalties that do not compensate the United States for actual pecuniary loss. The penalties asserted by the IRS as administrative claims are disallowed and expunged because the proofs of claim penalize the creditors of these Debtors for the Debtors' compliance with the Bankruptcy Code's prohibition against satisfaction of prepetition claims absent a confirmed plan of reorganization, because of their contingent nature, and because the Debtors' right to cure any deficiency has not expired. The court will not as a matter of law disallow the pre-petition income tax claims, but will reserve ruling thereon pending an evidentiary hearing.

Based upon the forgoing, it is hereby

ORDERED, as follows:

1) the 26 U.S.C. § 4971(a) and (b) proofs of claim for excise taxes are in fact penalty claims and are therefore denied priority status under § 507(a)(7)(E);

2) the 26 U.S.C. § 4971(a) and (b) proofs of claim are not in compensation for actual pecuniary loss and are therefore denied priority status under § 507(a)(7)(G);

3) the 1989 26 U.S.C. § 4971(b) and the 1990 26 U.S.C. § 4971(a) and (b) proofs of claim are not entitled to administrative status and are expunged;

4) the 1989 26 U.S.C. § 4971(a) proofs of claim are pre-petition unsecured claims;

5) no determination is made at this time as to whether any pre-petition unsecured claim asserted by the IRS is subject to equitable subordination;

6) to the extent that the 1990 penalty claims may have accrued prepetition, they are disallowed because such claims were not timely filed;

7) the court reserves ruling as to whether the 1987, 1988, and 1989 income tax liability contained in the amended proofs of claim were timely filed pending an evidentiary hearing; and

8) future proofs of claim filed by the IRS pursuant to 26 U.S.C. § 4971 that may arise because of the Debtors' failure to cure or correct the pre-petition accumulated funding deficiency are not entitled to preferred status until such time as this court determines that no cure or correction of the deficiency has been effectuated.