53 F.3d 1155
 75 A.F.T.R.2d 95-2029, 63 USLW 2719,
95-2 USTC P 50,632,
33 Collier Bankr.Cas.2d 613, 27 Bankr.Ct.Dec. 210,
Bankr. L. Rep. P 76,528,
19 Employee Benefits Cas. 1241,
Pens. Plan Guide P 23909C
 In re CF&I FABRICATORS OF UTAH, INC., Debtor.
UNITED STATES of America, Appellant,
v.
REORGANIZED CF&I FABRICATORS OF UTAH, INC., Reorganized
Colorado & Utah Land Company, Reorganized Kansas Metals
Company, Reorganized Albuquerque Metals Company, Reorganized
Pueblo Metals Company, Reorganized Pueblo Railroad Service
Company, Reorganized Denver Metals Company, Reorganized CF&I
Fabricators of Colorado, Inc., Reorganized CF&I Steel
Corporation, Reorganized The Colorado and Wyoming Railway
Company, Appellees.
 Nos. 94-4034 to 94-4036.
 United States Court of Appeals,
Tenth Circuit.
 April 27, 1995.
 
 Gary D. Gray, Attorney, Tax Div., Dept. of Justice, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., Kenneth W. Rosenberg, Attorney, and Scott M. Matheson, Jr., U.S. Atty. for State of Utah, of counsel, with him on the briefs), for appellant.
 Steven J. McCardell, LeBoeuf, Lamb, Greene & MacRae, Salt Lake City, UT (Stephen M. Tumblin and Kevin C. Marcoux, LeBoeuf, Lamb, Greene & MacRae, Salt Lake City, UT, and Frank Cummings, LeBoeuf, Lamb, Greene & MacRae, Washington, DC, with him on the brief), for appellees.
 Before TACHA and HOLLOWAY, Circuit Judges, and BURRAGE,* District Judge.
 TACHA, Circuit Judge.
 
 I. Background
 
 1
 CF&I Fabricators of Utah, Inc. and various related entities (collectively, "CF&I") sponsored two qualified pension plans established for the benefit of their employees and retirees. Under the plans, CF&I was obligated to make annual plan funding contributions. On September 15, 1990, CF&I failed to make a required $12.4 million plan funding payment for the year ending December 31, 1989. Two months later, CF&I petitioned for reorganization under Chapter 11 of the Bankruptcy Code. The larger of the two pension plans was subsequently terminated by the Pension Benefit Guaranty Corporation ("PBGC"), a wholly-owned government corporation that guarantees payment of certain pension benefits. See 29 U.S.C. Secs. 1321-1322b.[1]
 
 
 2
 The Internal Revenue Service ("IRS") filed several proofs of claim in the bankruptcy court. The claim that is the subject of this appeal arises under Internal Revenue Code ("IRC") section 4971(a), under which the IRS imposes a ten percent tax on the "accumulated funding deficiency" of specified pension plans. 26 U.S.C. Sec. 4971(a). CF&I's failure to make the required pension plan contribution on September 15, 1990, triggered the immediate imposition of the tax. See id. The parties do not dispute CF&I's underlying section 4971 liability. At issue is what, if any, priority the claim should be accorded.
 
 
 3
 In its proof of claim, the IRS asserted that CF&I's section 4971(a) liability was entitled to priority as an excise tax under Bankruptcy Code section 507(a)(7) (now codified at 11 U.S.C. Sec. 507(a)(8)).[2] The bankruptcy court disagreed with the IRS's position and held that CF&I's section 4971(a) liability was not an excise tax. Instead, the court characterized the claim as a penalty that did not compensate for pecuniary loss and was therefore not entitled to priority status. In re CF&I Fabricators, 148 B.R. 332, 337-40 (Bankr.D.Utah 1992). In a subsequent order, the bankruptcy court subordinated the IRC section 4971(a) claim to all other general unsecured claims pursuant to the Bankruptcy Code's equitable subordination provision, 11 U.S.C. Sec. 510(c)(1). The district court affirmed the bankruptcy court's orders, and the government appealed to this court. We have jurisdiction pursuant to 28 U.S.C. Secs. 158(d) and 1291.
 
 
 4
 In its appeal, the IRS argues that the bankruptcy and district courts erred (1) by concluding that the exaction imposed by IRC section 4971(a) was not entitled to priority under section 507(a)(7), and (2) by subordinating the IRS's claim to all other unsecured creditors under the doctrine of equitable subordination. In addition, the government suggests that we reconsider, in an en banc hearing, our decision in United States v. Dumler (In re Cassidy), 983 F.2d 161 (10th Cir.1992).
 
 II. Discussion
 
 5
 We review determinations of law by the bankruptcy court de novo. Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1536 (10th Cir.1990). Our review of the district court's order affirming the bankruptcy court is de novo as well. Burden v. United States (In re Burden), 917 F.2d 115, 116 (3d Cir.1990).
 
 A. Priority Under Section 507(a)(7)
 
 6
 The IRS contends that CF&I's section 4971(a) liability is a governmental claim entitled to priority under subsection 507(a)(7)(E) or, in the alternative, subsection 507(a)(7)(G). Section 507(a)(7)(E) accords priority to "an excise tax on ... a transaction occurring before the date of the filing of the petition for which a return ... is last due ... after three years before the date of the filing of the petition." 11 U.S.C. Sec. 507(a)(7)(E)(i). The same priority is accorded to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." Id. Sec. 507(a)(7)(G). The tax at issue here, IRC section 4971(a), is included in Subtitle D of the IRC, entitled "Miscellaneous Excise Tax." The IRS argues that, because the tax is labeled an "excise tax" under the IRC, it must be considered an excise tax under the Bankruptcy Code as well.
 
 
 7
 On December 7, 1992, after the bankruptcy court issued its first order in this case, we decided Cassidy, 983 F.2d 161. In Cassidy, we held that "Congress' labeling of [an] exaction as a tax is not determinative of its status for priority in bankruptcy." Id. at 163. The tax at issue in Cassidy was the ten percent additional tax imposed by 26 U.S.C. Sec. 72(t) on early distributions from qualified retirement plans. Section 72 is in subtitle A, chapter 1, subchapter B, part II of the IRC, which is titled "Items Specifically Included in Gross Income." Thus, the government argued, it should be given priority under section 507(a)(7)(A) as "a tax on or measured by income." We disagreed with the government and held that the label given a tax in the IRC was not determinative of its status for priority under section 507(a)(7). Cassidy further held that, to determine whether an exaction is a tax or penalty for priority in bankruptcy purposes, we apply the four-part test from In re Lorber Indus., 675 F.2d 1062 (9th Cir.1982). Cassidy, 983 F.2d at 163.
 
 
 8
 In the present case, the government vigorously argues that Cassidy was wrongly decided, again contending that a court should defer to Congress's designation of an exaction rather than look beyond the statutory label to the nature of the exaction. Cassidy binds this panel, however, because it is the law of this circuit. See In re Smith, 10 F.3d 723, 724 (10th Cir.1993) (per curiam) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."), cert. denied, --- U.S. ----, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994). We therefore conclude that the bankruptcy court correctly refused to treat the IRC's label as determinative for priority in bankruptcy purposes.
 
 
 9
 Instead, the bankruptcy court looked beyond the IRC's label and analyzed the nature of the exaction using the Lorber test. The court concluded that CF&I's section 4971(a) liability was not entitled to priority. We agree with the bankruptcy court's analysis and therefore affirm the order of the district court for substantially the reasons given by the bankruptcy court. See In re CF&I Fabricators, 148 B.R. 332.
 
 B. Equitable Subordination
 
 10
 The government's first argument against equitable subordination of its claim is that a bankruptcy court may not subordinate a claim under section 510(c)(1) if that claim is entitled to priority under section 507. Because we have determined that the IRS's claim here is a nonpecuniary loss penalty not entitled to section 507 priority, we need not discuss the merits of this argument.
 
 
 11
 The government next contends that the phrase "under principles of equitable subordination" in section 510(c) prohibits the bankruptcy court from subordinating a claim without a finding of misconduct on the part of the subordinated claimant. In this case, the bankruptcy court expressly found that "there [had] been no inequitable conduct on the part of the Internal Revenue Service."
 
 
 12
 The Bankruptcy Code neither defines the doctrine of equitable subordination, see United States v. Noland, 48 F.3d 210, 214-15 (6th Cir.1995), nor specifies the circumstances under which it should be imposed, see United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re United States Abatement Corp.), 39 F.3d 556, 561 (5th Cir.1994). Consequently, courts applying section 510(c)(1) have looked to common law principles for guidance. See, e.g., id.
 
 
 13
 In general, equitable subordination is imposed only when a creditor has committed some kind of wrongful conduct. In re Virtual Network Servs. Corp., 902 F.2d 1246, 1248 (7th Cir.1990); Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 700 (5th Cir.1977). Nevertheless, the four circuit courts that have considered the matter have concluded that a court may subordinate a nonpecuniary loss tax penalty claim without a showing of misconduct on the part of the government. See Noland, 48 F.3d at 217-19; Burden, 917 F.2d at 118-19; Schultz Broadway Inn v. United States, 912 F.2d 230, 234 (8th Cir.1990); In re Virtual Network, 902 F.2d at 1249-50.[3]
 
 
 14
 The question was addressed first by the Seventh Circuit in Virtual Network. After a thorough analysis of the legislative history of section 510(c)(1), the court decided that Congress intended courts to continue developing the principles of equitable subordination. Virtual Network, 902 F.2d at 1249-50. The court further found that "[section] 510(c)(1) authorizes courts to equitably subordinate claims to other claims on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor claiming parity among other unsecured general creditors." Id. at 1250.
 
 
 15
 In subsequent cases addressing this issue, other courts have employed substantially the same analysis as the Virtual Network court. See Noland, 48 F.3d at 213-18; Burden, 917 F.2d at 116-20; Schultz Broadway Inn, 912 F.2d at 231-34. We find the reasoning of Virtual Network persuasive and hold that section 510(c)(1) does not require a finding of claimant misconduct to subordinate nonpecuniary loss tax penalty claims.
 
 
 16
 The bankruptcy court considered the equities in this case and determined that subordination of the IRS's section 4971 claim to all other unsecured claims was appropriate. After noting that the facts in the case were undisputed, the bankruptcy court observed that general unsecured creditors of CF&I will receive only a small percentage of their claims. One of CF&I's unsecured creditors is the PBGC, which will be paying the pension benefits due under CF&I's terminated pension plan. Declining to subordinate the IRS's penalty claim would harm innocent creditors rather than punish the debtor for failing to fund the pension plan. Thus, the bankruptcy court reasoned, allowing the IRS's penalty claim would not advance the purposes of either IRC section 4971 or the Bankruptcy Code. We conclude that the bankruptcy court correctly addressed the equities in this case and therefore affirm the orders subordinating the IRS's section 4971 claims.
 
 III. Conclusion
 
 17
 For the reasons stated in this opinion, the judgment of the district court is AFFIRMED. In addition, the government's suggestion for hearing en banc to reconsider our decision in In re Cassidy, 983 F.2d 161, has been brought to the attention of all the active judges of the court. As no poll has been requested on the suggestion, it is hereby DENIED.
 
 
 
 *
 The Honorable Michael Burrage, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation
 
 
 [1]
 Most of the funds from which the PBGC pays pension benefits come from insurance premiums paid by sponsors of qualified pension plans. See 29 U.S.C. Sec. 1305. The PBGC filed proofs of claims against the debtors in the bankruptcy court. The bankruptcy court ruled that these claims are unsecured and are not entitled to priority or administrative status. That ruling is not at issue in this appeal
 
 
 [2]
 Congress amended section 507 on October 22, 1994. Former subsection 507(a)(7) is currently located at subsection 507(a)(8). Other than the change in priority of governmental claims, the text of the subsection is unchanged. In this opinion we will refer to the provision as it was codified at the time the IRS asserted its claim
 
 
 [3]
 In addition, a number of district and bankruptcy courts have subordinated nonpecuniary loss tax penalties under section 510(c)(1). See, e.g., In re Juvenile Shoe Corp. of Am., 166 B.R. 404, 410 (Bankr.E.D.Mo.1994); Walker v. Ferguson (In re Import & Mini Car Parts, Ltd.), 136 B.R. 178, 182 (Bankr.N.D.Ind.1991); Retail Marketing Corp. v. United States (In re Mako, Inc.), 135 B.R. 902, 904 (E.D.Okla.1991); Seidle v. United States (In re Airlift Int'l, Inc.), 120 B.R. 597, 601-02 (S.D.Fla.1990); In re Merwede, 84 B.R. 11, 14 (Bankr.D.Conn.1988)