**In the Matter of VIRTUAL NETWORK SERVICES CORPORATION, Debtor–Appellee.**

**Appeal of UNITED STATES of America.**

No. 89–2335.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1990.

Decided May 14, 1990.

As Amended May 24, 1990.

Thomas R. Lamons, D. Patrick Mullarkey, Gary R. Allen, Debra J. Stefanik, Gary D. Gray, Joanne Rutkowski, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellant.

Stephen T. Bobo, Towbin & Zazove, Richard G. Smolev, Sheldon L. Solow, Chicago, Ill., for debtor-appellee.

Before BAUER, Chief Judge, and CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

In this appeal, we must decide whether the district court erred in holding, contrary to the bankruptcy court's judgment, that 11 U.S.C. § 510(c)(1) empowers the bankruptcy court to equitably subordinate the Internal Revenue Service's (IRS) claim for non-pecuniary loss tax penalties [1] to claims of other creditors in this Chapter 11 liquidation proceeding.

## I. BACKGROUND

On September 23, 1986, Virtual Network Services Corporation ("VNS"), a long-dis-

---

1. "Non-pecuniary loss tax penalty claims", in other words, are claims by the IRS to collect money from VNS for its delinquent payment of taxes, *see* 26 U.S.C. § 6653; since the amount is in excess of the tax due and owing, these claims are considered non-pecuniary losses.

tance telephone service company, filed for Chapter 11 relief. Shortly thereafter, and pursuant to bankruptcy court order, VNS became a debtor-in-possession, operating the business for the benefit of the creditors. *See* 11 U.S.C. §§ 1107, 1108. VNS subsequently sold most of its operating assets, and filed an amended reorganization plan to liquidate the company. In response, the IRS filed a Proof of Claim against the estate for $625,118.78. The majority of this sum constituted a priority claim for employment and withholding taxes under 11 U.S.C. § 507(a)(7); the remaining $63,022.79 represented pre-petition tax penalties which the IRS identified as a general unsecured claim. *See* 11 U.S.C. § 507(a)(4).

VNS filed an objection with the bankruptcy court contending that the Government's non-pecuniary loss tax penalty claims[2] should be subordinated to the claims of the other general unsecured creditors based on principles of equitable subordination.[3] The bankruptcy court ruled in favor of the IRS, concluding that equitable subordination principles did not operate in this case and that the claims were considered properly on a par status with the other general unsecured creditors' claims. VNS appealed to the district court. Following a thorough analysis of § 510(c)'s equitable subordination provision, the district court reversed the bankruptcy court's judgment, and ordered equitable subordination in the bankruptcy court subordinating the IRS's claims to those of VNS's other general unsecured creditors. 98 B.R. 343. Now the Government appeals.

## II. ANALYSIS

■ Our analysis of the district court's judgment reversing the decision of the bankruptcy court is governed by a *de novo* standard of review. *See* 28 U.S.C. § 157(b)(2)(B) and § 157(b)(1). Section 510(c)(1)[4] allows bankruptcy courts to reorder existing priorities among creditors "under principles of equitable subordination." As the district court noted in its judgment order, no definition of the phrase appears in the Bankruptcy Reform Act of 1978 ("the Act"). We, therefore, look to the legislative history of § 510(c)(1) to determine whether that throws light on what meaning Congress intended for it, and its applicability here.

The IRS claims the district court erred in concluding that the legislative history of § 510(c)(1) authorized equitable subordination in this case for essentially one reason: the historical meaning of equitable subordination. The IRS argues that when the drafters of the Act adopted the language in § 510(c)(1), equitable subordination had a definite and established meaning; the IRS contends that in applying equitable subordination, courts at that time required some inequitable or wrongful conduct on the part of the creditor who sought par status with other general creditors. The IRS urges us to conclude that Congress did not intend for this "established meaning" to be changed by subsequent case law. Since the IRS has not acted inequitably in this case, it contends that the non-pecuniary loss tax penalty claims are not subject to equitable subordination under § 510(c)(1).

In analyzing the legislative history, we begin, as did the district court, by noting that the history of the passage of the Bankruptcy Reform Act is unique. Representative Edwards, the House floor manag-

---

**2.** Although VNS challenged all of the IRS's calculations in its Proof of Claim before the bankruptcy court, we limit our discussion to the status of the non-pecuniary loss tax penalty claims which VNS solely contested in the district court.

**3.** In the bankruptcy court, VNS made two arguments for equitable subordination: one pursuant to 11 U.S.C. § 726(a), and the other based on 11 U.S.C. § 510(c). The latter ground was primarily relied on in the district court and is also principally relied on here.

**4.** 11 U.S.C. § 510(c)(1) provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest...."

er and the Chairman of the subcommittee introducing the House Amendments on September 28, 1978, stated, "[This] ... is the culmination of over 8 years' work by a congressional commission, two congressional committees, and numerous outside groups. The amendment accomplishes the substantial reform of the bankruptcy laws for the first time in 40 years." 124 Cong. Rec. H11,089–H11,117 (daily ed. Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6436. Only a few members of Congress were involved in the negotiations of the final versions of the bill. *See* Klee, *Legislative History of the New Bankruptcy Code*, 28 DePaul L.Rev. 941 (1979). And although the "eleventh-hour" hearings secured passage of the Act, they resulted in a document representing compromises which were previously unevaluated by congressional committee. *See* Kennedy, *Foreward: A Brief History of the Bankruptcy Reform Act*, 58 N.C.L.Rev. 667, 676–77 (1980).

Particularly, the committees in charge of evaluating § 510 did not prepare a final report on the section. *See* Wald, *Justice in the Ninety-fifth Congress: An Overview*, 64 A.B.A.J. 1854, 1855 (1978). A review of the earlier committee reports reveals, as Representative Edwards noted, that § 510(c)(1) represented a compromise in the language used between the House and Senate versions. *See, e.g.*, S.Rep. No. 989, 95th Cong., 2d Sess. 74 (1978), *reprinted in*, 1978 U.S.Code & Cong.Admin.News 5787, 5860; H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1978), *reprinted in*, 1978 U.S.Code & Cong.Admin.News 5963, 6315. In addition, as the district court explained, the earlier committee reports could not assess the language of § 510(c)(1) as enacted at that final congressional session. Finally, members of Congress relied extensively on Representative Edwards and Senator DiConcini, the sponsor and co-sponsor of the House and Senate bills, respectively, to inform them of the numerous compromises recommended prior to final passage of the bill. Accordingly, the district court concluded that the committee reports were inconclusive on the meaning of the term "equitable subordination." Upon our examina-

tion, we are persuaded that the committee reports are necessarily inconclusive as to the meaning of "equitable subordination" as enacted in § 510(c)(1).

Also for the reasons above, in analyzing § 510(c)(1), the district court chose to rely on statements made during the final hearings by Representative Edwards and Senator DiConcini. Looking to Representative Edwards' comments to Congress regarding § 510(c)(1) specifically, we note he stated that,

> "It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if [the] holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty...."

124 Cong.Rec. H11,089–H11,117 (daily ed. Sept. 28, 1978), *reprinted in*, 1978 U.S. Code & Cong.Admin.News 5787, 6452. Senator DiConcini's statements mirror those made by Representative Edwards. *See* 124 Cong.Rec. S17,403–S17,434 (daily ed. Sept. 28, 1978), *reprinted in*, 1978 U.S. Code & Cong.Admin.News 5787, 6521. Based on these statements, the district court concluded that the legislative history of § 510(c)(1) favors a broad reading of the "principles of equitable subordination" and authorizes equitable subordination "as the courts develop[ ] those principles."

It is true that when Congress adopted the language in § 510(c)(1), equitable subordination was imposed virtually only where there was some wrongful conduct on the part of the creditor. *See, e.g., Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). As both the IRS and VNS are aware, however, equitable subordination of tax penalty claims did not occur prior to passage of the Act because under the then-existing law, the Bankruptcy Act of 1898, 11 U.S.C. § 93(j), noncompensatory penalty claims owed to the Government were specifically disallowed. *See In re Kline*, 403 F.Supp. 974 (D.Md.1975), *aff'd*, 547 F.2d 823 (4th Cir. 1977). More telling than this, though, is

the Second Circuit's opinion in *In re Stirling Homex Corp.*, 579 F.2d 206 (2nd Cir. 1978), which was decided more than three months prior to passage of the Act. After exploring the equitable jurisdiction of the bankruptcy courts, and the courts' power to equitably subordinate claims in bankruptcy, the Second Circuit explicitly ordered subordination of claims made by defrauded shareholders who had not acted wrongfully. *Id.* at 212–13. In addition, the court specifically discussed the thrust of the versions of § 510(c)(1) (formerly numbered § 510(b)) that persuaded it to rule in favor of subordination; the Court concluded that any thing other than equitable subordination in that case "would ... violate [the court's] sense of simple fairness...." *Id.* at 215. We think it is eminently not unreasonable to think that the principal managers of the bill were aware of this decision and its implications prior to passage of the section. With this decision, the Government's position on the historical and established meaning of "equitable subordination" is incorrect.

In addition, under § 510(c)(1), a number of courts have provided for equitable subordination without making creditor misconduct a necessary prerequisite for its application. *See, e.g., In re Merwede*, 84 B.R. 11 (Bkrtcy D.Conn.1988). In fact, this represents the overwhelming view of the bankruptcy courts which have analyzed § 510(c)(1). *See, e.g., In re Colin*, 44 B.R. 806, 810 (Bankr.S.D.N.Y.1984); *In re Quality Sign Co., Inc.*, 51 B.R. 351 (Bankr.S.D. Ind.1985); *In re A.H. Robins Co., Inc.*, 89 B.R. 555 (Bankr.E.D.Va.1988); *In re Johns–Manville Corp.*, 68 B.R. 618, 627 (Bankr.S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987); *In re Airlift Int'l, Inc.*, 97 B.R. 664 (Bankr.S.D.Fla.1989).

The IRS argues, even so, that applying § 510(c)(1) without requiring some wrongful conduct on the part of the creditor nullifies the complementary provision at 11 U.S.C. § 726(a)(4). Section 726(a)(4) is part of Chapter VII, which provides for straight liquidations, not bankruptcies as in Chapter XI. Under § 726(a)(4), noncompensatory penalty claims are *automatically* subordinated to fourth priority. *See* 11 U.S.C.

§ 726(a)(4) (emphasis added). The district court determined, and we agree, that § 726(a) poses "no danger" of inconsistency with § 510(c)(1), since § 726(a) governs the priorities of claims in bankruptcy "[e]xcept as provided in section 510." Thus, by its very terms, § 726(a)(4) is not rendered meaningless or void by our interpretation of § 510(c)(1). *See also* Epling, *Proposal for Equality of Treatment for Claims in Chapter 7 and Claims in a Liquidating Chapter 11 Case*, 4 Bankr. Dev.J. 399, 403, 415 (1987).

The IRS also argues, based in large part on language in earlier versions of § 510(c)(1), that the section does not authorize subordination of tax claims, which it contends its present claims are more like than non-pecuniary claims. We have already stated above that the earlier versions of § 510(c)(1), and the committee reports discussing those versions, are inconclusive on the meaning of "principles of equitable subordination." But the IRS does find some support for its argument in other language in the legislative history. It provides in part:

> Since the House amendment authorizes subordination of claims only under principles of existing case law, a tax claim would rarely be subordinated under this provision of the bill.

124 Cong.Rec. 32398, 32416 (Rep. Edwards); 124 Cong.Rec. 33998, 34016 (Rep. DeConcini). The district court did not find that the claims made by the IRS were the type considered to be a "tax claim." As the district court noted, however, the penalty provisions in the tax code are expressly meant to deter and punish: two goals in contravention of any equity or equitable considerations. The IRS's attempt to recharacterize the tax penalty as a tax claim in order to avoid subordination is not new but it has never succeeded nor do we conclude it should be successful here. *See In re Merwede*, 84 B.R. at 12; *In re Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bankr.N. D.Ohio 1987).

■ After considering the congressional statements and legislative history and scheme, we agree with the district court that Congress intended the courts to "de-

velop" the "principles of equitable subordination." We further conclude, as did the district court, that the principles of equitable subordination are broader than the doctrine which developed prior to § 510(c)(1)'s enactment. It is clear that in principle, equitable subordination no longer requires, in all circumstances, some inequitable conduct on the part of the creditor.

■ In the event this court concluded as we have, the IRS argues that the district court did not, as required, weigh the equities in this particular case, and instead issued a blanket approval allowing courts to equitably subordinate all non-pecuniary loss tax penalty claims involving liquidating Chapter 11 proceedings. The district court concluded that equitable subordination under § 510(c)(1) could be applied in this case, *inter alia*, because 1) the goal of equitable subordination focuses not on the conduct of the creditor but on fairness to creditors in a particular case, 2) punishing or deterring VNS's innocent creditors because of VNS's wrongful conduct serves no purpose, and 3) the IRS's claims in this case are punitive in nature.

The IRS challenges the district court's reasoning on grounds 2 and 3. The Government argues that it is just as innocent as the general unsecured creditors and therefore it is unfair to make it suffer in relation to those other creditors. Not to the contrary, the district court found that the IRS was innocent, but that it had waited too long to collect its debt, therefore, making it unfair for the court to shift the burden of the debt to other innocent creditors. The facts of this case support this rationale, and we conclude, as did the district court, that as between the various unsecured creditors, those with actual losses in this instance are entitled to have the IRS's claims equitably subordinated.

The IRS also attacks the district court's findings that the tax penalty claims are punitive by recharacterizing the nature of its claims as "unlike other nonpecuniary loss penalties, [in that they] are designed not just to punish the debtor, but also serve to protect the integrity of tax systems and to reimburse the Government for ... costs incurred as a result of certain taxpayer misconduct." Appellant's brief, at 9. This argument also surfaced at oral argument, but in searching the pleadings before the district court, we did not uncover this contention, and question, therefore, whether it is properly before us. *See Hays v. Sony Corp. of America*, 847 F.2d 412 (7th Cir. 1988). Moreover, even if properly raised before the district court, we find this vague assertion is an attempt to diffuse the purpose behind the tax penalties, *i.e.*, to punish those who fail to abide by the taxing structure, and to deter those who might be inclined to avoid tax payment. As such, we conclude that allowing the IRS to recover its non-pecuniary loss claims along with others who have actually "invested" in VNS and lost would be unfair on these facts.

As for the other grounds that the district court relied on in applying equitable subordination to the IRS's claims, we are persuaded that the district court accurately addressed the equities of this case. The district court correctly considered that it was unfair to allow the IRS's tax penalty claims to come out of the "pockets" of other general unsecured creditors who had not been paid their pecuniary losses. Moreover, in this case the debtor has sold most of its operating assets and filed an amended plan for liquidation. In other words, VNS exists in name only, as an entity out of which remaining funds are distributed, in this case between 15–30% of that due, to its creditors. We agree that the equities in this case favor the subordination of the IRS's claims to those of the other general unsecured creditors.

In sum, we conclude that § 510(c)(1) authorizes courts to equitably subordinate claims to other claims on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor claiming parity among other unsecured general creditors. The district court's judgment directing the bankruptcy court to equitably subordinate the IRS's claims in this case is affirmed.

AFFIRMED.