In re ENVIRODYNE INDUSTRIES, INC., Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corporation, Viskase Holding Corporation, Viskase Sales Corporation, Clear Shield National, Inc., Envirodyne Finance Company, Debtors.

ENVIRODYNE INDUSTRIES,
INC., Plaintiff,

v.

AMERICAN EXPRESS,
et al., Defendants.

Bankruptcy Nos. 93 B 310, 93 B 312 to 93 B 316, 93 B 318 and 93 B 319.
Adv. No. 93 A 01227.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 20, 1995.

Allan S. Brilliant, Holleb & Coff, Chicago, IL, for debtor/plaintiff.

Daniel E. Lugren, San Francisco, CA, and David Epstein, Boston, MA, for defendants American Exp., et al.

## MEMORANDUM OPINION

### CROSS MOTIONS FOR SUMMARY JUDGMENT

JOHN D. SCHWARTZ, Chief Judge.

The matters before the court are the cross motions for summary judgment of Defendant State of California and Plaintiff Envirodyne Industries, Inc. ("Envirodyne" or "Debtor" or "Plaintiff"). In this adversary proceeding, Envirodyne seeks to equitably subordinate those shareholders of pre-merger Envirodyne who have not tendered or otherwise redeemed their stock after pre-merger Envirodyne merged with Emerald Sub in 1989 or anytime subsequent thereto. The Defendants, the State of California, along with Defendants Seymour J. Ryckman; David B. Bloom; Jerry M. Friedman, as custodian for Jennifer Friedman; Jerry M. Friedman, as custodian for Julie Friedman; Jerry M. Friedman, as custodian for Mark Friedman; Anton J. Matijevic; H. Matijevic Industries; Joseph Matijevic; James A. Null; Bernie R. Prusak; Harvey M. Schmidt; and Illinois Department of Financial Institutions, all of whom have joined the State of California's motion (the defendants shall hereinafter be collectively referred to as "Defendants"), assert, as unsecured creditors of the Debtor, that since they did not engage in fraudulent, or any other wrongful, conduct, then Envirodyne may not equitably subordinate them to its general unsecured creditors. The Defendants therefore should be entitled to the same distribution that the other general unsecured creditors received in the Envirodyne bankruptcy proceeding. Envirodyne maintains that fraudulent conduct is not necessary to subordinate the Defendants pursuant to § 510(c).[1] Further, it would be inequitable to its general unsecured creditors not to subordinate the claims of the Defendants, as the origin of each of the Defendants' claims was equity, not debt. For the reasons stated below, the court shall deny the Defen-

---

1. Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

dants' motion for summary judgment and grant Envirodyne's cross motion for summary judgment.

## SUMMARY OF THE UNDISPUTED FACTS

Local Rule 12(m)[2] of the Bankruptcy Rules of the United States District Court for the Northern District of Illinois require the moving party to file a detailed statement of material facts as to which there are no genuine issue. The party opposing the motion is required by Rule 12(n) to file a response to the movant's statement and set forth any facts which require denial of summary judgment. Both parties have made filings in conformance with the above standards and agree upon the following statement of facts:

The undisputed facts to this proceeding have been previously set forth by this court. *See In re Envirodyne Indus., Inc.*, 1993 WL 566565 at *7–13 (Bankr.N.D.Ill.1993) (Findings of Fact and Conclusions of Law) and *In re Emerald Acquisition Corp.*, 170 B.R. 632, 637–38 (Bankr.N.D.Ill.1994). Accordingly, the court shall only recite those facts germane to this proceeding.

In 1989, Emerald Acquisition Corporation ("Emerald") was created for the purpose of acquiring Envirodyne Industries, Inc. ("Former Envirodyne"). Emerald Sub One, Inc. ("Emerald Sub"), a wholly owned subsidiary of Emerald, was organized for the purpose of making an offer to purchase the outstanding shares of common stock of Former Envirodyne. In conjunction with a leveraged buyout ("LBO Transaction"), Emerald Sub purchased the tendering shares of Former Envirodyne at $40 per share and Former Envirodyne was merged into Emerald Sub, with current Envirodyne being the surviving entity.

The merger of these entities, both Delaware corporations, was made in accordance with Sections 253 and 262 of the Delaware General Corporation Law ("DGCL"). As of the effective date of the merger, June 1, 1989, the stock of Former Envirodyne was canceled. The shareholders of Former Envirodyne had the right to redeem their shares at $40 per share or to dissent from the merger and obtain an appraisal in accordance with Delaware General Corporation Law. (Agreement of Merger, § 2.02). Former Envirodyne shareholders who failed to respond to the tender offer ceased to be equity holders and became creditors of Envirodyne, entitled to receive $40 per share, without interest, upon demand. (Agreement of Merger, § 2.02). Each of the Defendants is a nontendering shareholder, a representative thereof, or a successor in interest thereof. None of the Defendants dissented from the merger and therefore the right of appraisal is not available.

On January 6, 1993, an involuntary bankruptcy petition was filed against Envirodyne. The next day, Envirodyne's subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and Envirodyne consented to the entry of an order of relief in the involuntary case. During the period prior to the commencement of this case, Envirodyne's consolidated balance sheet showed an accrued current liability of $2,176,000 due to cashed out former shareholders. On September 23, 1993, the Debtor's commenced this adversary proceeding, seeking to equitably subordinate the Defendants' claims to those held by Envirodyne's other general unsecured creditors, pursuant to § 510(c). Under the Debtors' First Amended Joint

**2.** On February 4, 1985, the full bankruptcy court met in executive session and with the approval of the United States District Court for the Northern District of Illinois, issued a General Order applying the "General Rules of the United States District Court for the Northern District of Illinois," *as amended form time to time, but with the amendments and provisos described in the General Order,* as the "General Rules and Civil Rules of this United States Bankruptcy Court." (Hereinafter designated as the "Old Local Bankruptcy Rules.") Some of the Old Local Bankruptcy Rules have since been amended.

On June 24, 1994, the District Court promulgated an entirely new set of "Local Bankruptcy Rules," effective July 11, 1994 at 12:01 a.m., and applied them to all pending cases. (Hereinafter referred to as the "New Local Bankruptcy Rules.") Because the Motion was filed and the briefing schedule was set before the New Local Rules became effective, the court cites the Old Local Bankruptcy Rules as part of its disposition of the Motion. The difference in the rules does not affect the outcome of this Motion.

Plan of Reorganization as Twice Modified ("Plan"), the general unsecured creditors have received 32.28 shares of common stock in reorganized Envirodyne for each $500 amount of allowed claim. The Defendants have not received a distribution. At the time of the Disclosure Statement, Envirodyne estimated that this distribution would allow each general unsecured claimant to recover approximately two-thirds of the allowed amount of its respective claim. *See* Second Supplement to Debtors' First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code dated as of October 25, 1993 at 10. Since confirmation of the Plan, the trading price of Envirodyne's stock is lower then what was estimated at the time the Plan was confirmed. *See* Affidavit of Gordan S. Donovan, ¶ 15 (Donovan is the Treasurer and Secretary of Envirodyne). Accordingly, the general unsecured creditors were not, and have not, been paid in full. Therefore, the Defendants have not received a distribution under the Plan.

## *JURISDICTION*

These motions are before the court pursuant to 28 U.S.C. § 157, and are referred here under Local District Rule 2.33. This court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(1).

## *SUMMARY JUDGMENT STANDARDS*

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (adopted by Fed.R.Bankr.Pro. 7056). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986)).

The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading; the response of that party must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 567 (7th Cir.1989); *Patrick v. Jasper County*, 901 F.2d 561, 564–66 (7th Cir.1990).

On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56; *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991); *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987).

The Court should not "weigh the evidence." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *Illinois Bell Telephone Co. v. Haines and Company, Inc.*, 905 F.2d 1081,

1087 (7th Cir.1990), *vacated on other grounds*, 499 U.S. 944, 111 S.Ct. 1408, 113 L.Ed.2d 462 (1992). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511; *Trautvetter*, 916 F.2d at 1147. When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

■ When each side seeks summary judgment, that does not by itself indicate that there are no genuine issues of material fact. The court must rule on each motion separately in determining whether or not each judgment should be entered, in accordance with applicable principles. *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987) (Shadur, J.); *District 12, United Workers of Am. v. Peabody Coal Co.*, 602 F.Supp. 240, 242 (S.D.Ill.1985); *In re Woodstock Assocs. I, Inc.*, 120 B.R. 436, 442 (Bankr.N.D.Ill.1990). See 10A C. Wright, A. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987). Cross motions for summary judgment do not require the court to decide the case on those motions. The court can deny both motions if both parties fail to meet their burden. *ITT*, 674 F.Supp. at 1331; *Wolf v. Maryland Casualty Co.*, 617 F.Supp. 456, 458 (S.D.Ill.1985). See 10A C. Wright, A. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987).

In this adversary proceeding, the parties, and the court, agree that the issue before the court is solely one of law. Therefore, the prevailing party shall be entitled to summary judgment.

## DISCUSSION

■ Envirodyne's request to equitably subordinate the nontendering shareholders of a short form merger executed pursuant to DGCL § 253 is one of first impression. Under Section 510(c), a court may:

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

> (2) order that any lien securing such a subordinated claim be transferred to the estate.

The vast majority of courts, applying the test in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977), require either fraudulent or wrongful conduct on the part of the claimant before utilizing § 510(c). *In re Fabricators, Inc*, 926 F.2d 1458, 1464 (5th Cir.1991); *In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055, 1061 (6th Cir.1991), *cert. denied* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); *In re Bill Cullen Electrical Contracting Co.*, 156 B.R. 235 (Bankr.N.D.Ill.1993).

However, in recent cases, courts have used § 510(c) to equitably subordinate the holders of both tax penalty claims and claims originating from a stock redemption, despite the absence of any wrongdoing on the part of such claimants. *See In re Burden*, 917 F.2d 115, 116–18 (3rd Cir.1990); *Schultz Broadway Inn v. United States*, 912 F.2d 230, 232 (8th Cir.1990); *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1237 (7th Cir.1990); *In re Virtual Network Services Corp.*, 98 B.R. 343 (N.D.Ill.1989), *aff'd* 902 F.2d 1246, 1249–50 (7th Cir.1990); *In re SPM Manufacturing Corp.*, 163 B.R. 411, 413–16 (Bankr.D.Mass. 1994). Relying on the legislative history of § 510(c), as well as the vague language of § 510(c), these courts have refused to imply a wrongful conduct requirement into § 510(c). Further, in tax penalty cases, failing to equitably subordinate the holders of tax penalty claims would penalize the general unsecured creditors for misconduct by a debtor. *Schultz Broadway*, 912 F.2d at 233–34; *Virtual Network*, 902 F.2d at 1250. In *SPM Manufacturing*, a stock redemption case, § 510(c) was used to subordinate a claim in which there was neither misconduct by a claimant nor by the debtor. *SPM Manufacturing*, 163 B.R. at 411–12. Relying on

*Virtual Network* and *Burden,* the *SPM* court held that there was no misconduct requirement in § 510(c) and equitable subordination was appropriate solely because of the origin of the claim. *SPM Manufacturing,* 163 B.R. at 411–12.

It is the approach in *SPM Manufacturing* that Envirodyne asks this court to adopt. It readily acknowledges that there was no wrongful or fraudulent conduct on the part of the Defendants. If misconduct was a requirement to impose § 510(c), the Defendants' motion for summary judgment would be granted. Instead, Envirodyne requests that this court follow the lead of the Seventh Circuit and not require misconduct on the part of the claimant as a prerequisite for subordinating a claim under § 510(c). Envirodyne argues that, after examining the origins of the Defendants' claims, its use of § 510(c) in the Plan was appropriate. Although legally, the Defendants were creditors of the Debtor's estate, holding valid claims, Envirodyne maintains that since their claims arose on account of their stock ownership in Former Envirodyne, the Defendants should not be afforded the same priority as its general unsecured creditors. Envirodyne is not attempting to treat the Defendants as equity holders of Envirodyne. The Defendants would be entitled to be paid in full from any remaining assets of Envirodyne, to the extent such exist, before any distribution could be made to Envirodyne's equity holders. Rather, Envirodyne seeks to subordinate the shareholders of Former Envirodyne to Envirodyne's general unsecured creditors.

### I. *Applicable Standard for Applying § 510(c)*

The phrase "under principles of equitable subordination" is not defined by the Bankruptcy Code nor can its meaning be definitively deciphered from the legislative history of § 510(c). *See Virtual Network,* 98 B.R. at 343; *Burden,* 917 F.2d at 115. As a result, the portion of the legislative history that a party relies upon depends on its position in a particular case. *See Virtual Network,* 98 B.R. at 343 (containing a thorough discussion of the legislative history of § 510(c)); *but see* Scott M. Browning, Note, *No Fault Equitable Subordination: Reassuring Investors That Only Government Penalty Claims Are At Risk,* 34 William & Mary L.Rev. 487 (1993) (arguing for a return to the *Mobile Steel* standard by criticizing *Virtual Network* and its progeny).

As previously stated, in the vast majority of cases, in order to apply § 510(c), the party seeking to impose § 510(c) must satisfy the *Mobile Steel* test. Proponents of the *Mobile Steel* test contend that § 510(c) codified the existing case law on equitable subordination. This view finds support in the following fragment of the legislative history:

> that any subordination ordered under this provision must be based on principles of equitable subordination. These principles are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct. As originally introduced, the bill provided specifically that a tax claim may not be subordinated on equitable grounds. The bill deletes this expression, but the effect of the amendment should be much the same in most situations since, under the judicial doctrine of equitable subordination, a tax claim would rarely be subordinated.

S.Rep. No. 989, 95th Cong., 2d Sess. 74 (1978), reprinted in, 1978 U.S.Code Cong. & Admin. News 5787, 5860.

The Defendants, arguing that § 510(c) should be narrowly construed, assert that this statement is proof of Congress' intent to codify the *Taylor* [3], *Pepper* [4], and *Comstock* [5] trilogy, as interpreted by *Mobile Steel,* all of which required some form of inequitable conduct by the creditor before equitably subordinating such creditor. *See* Browning, 34 William & Mary L.Rev. at 492–94.

---

**3.** *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939).

**4.** *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

**5.** *Comstock v. Group of Institutional Investors,* 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948).

However, the legislative history pendulum swings both ways in this case. Recently, especially in the Seventh Circuit, another portion of the legislative history has been cited to support the Debtor's position that wrongful or inequitable conduct is not required in order to equitably subordinate a creditor. The following statements by Representative Edwards and Senator DeConcini support a more expansive view of § 510(c), stating that this section:

> represents a compromise between similar provisions in the House bill and Senate amendment. * * * It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if [the] holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor. * * *

124 Cong.Rec. H11,089—H11,117 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); id., S17,403—S17,434 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini), reprinted in, 1978 U.S.Code Cong. & Admin. News 5787, 6452, 6521.

Courts adopting this viewpoint maintain that Congress intended the phrase "under the principles of equitable subordination" to be a fluid concept. *Schultz,* 912 F.2d at 232; *Virtual Network,* 98 B.R. at 347; *SPM Manufacturing,* 163 B.R. at 414. Courts with this perspective must determine, on a case by case basis, whether it is appropriate, considering the equities of the case, to subordinate a class of unsecured creditors to another such class of unsecured creditors, despite the lack of inequitable conduct by either class. *Virtual Network,* 902 F.2d at 1250; *Vitreous Steel,* 911 F.2d at 1237; *Burden,* 917 F.2d at 120. This has been labelled as the "no fault equitable subordination" test. *See* Browning, 34 William & Mary L.Rev. at 492–94.

In his article, Browning foresees catastrophic consequences of this new test. He fears that bankruptcy courts will cavalierly subordinate claims of creditors based on an individual bankruptcy court's notion of fairness. *Id.* at 518. As a result, lenders will be unable to assess risk and that the security of creditors will be endangered. *Id.* at 487, 518. These doomsday predictions regarding the ramifications of no fault equitable subordination have thus far not come into fruition. Courts have not returned the law to a position in which fairness is the only guideline for applying the principles of equitable subordination. *See Id.* Courts have not applied the doctrine of no fault equitable subordination except in tax penalty cases, *Burden,* 917 F.2d at 120 and *Virtual Network,* 902 F.2d at 1250, punitive damages cases, *In re Colin,* 44 B.R. 806, 810 (Bankr.S.D.N.Y.1984) and *In re Johns–Manville Corp.,* 68 B.R. 618 (Bankr. S.D.N.Y.1986), *aff'd in part, rev'd in part,* 78 B.R. 407 (S.D.N.Y.1987), *aff'd* 843 F.2d 636 (2nd Cir.1988) and a stock redemption case, *SPM Manufacturing,* 163 B.R. at 414.

Neither the security of creditors nor the policy of the Bankruptcy Code have been undermined. In these scenarios, it was deemed unfair to the unsecured creditors not to equitably subordinate the claims of the Internal Revenue Service and the holders of punitive damage claims, respectively, because of wrongdoing by the debtor. *Virtual Network,* 902 F.2d at 1250 (tax penalties) and *Johns–Manville,* 68 B.R. at 627 (punitive damages). In the case of a stock redemption, the court looked at the substance of the transaction, as opposed to its form, in deciding to equitably subordinate the claims of a former shareholder, turned creditor, to the claims of the general unsecured creditors. *SPM Manufacturing,* 163 B.R. at 414. While neither the tax penalty, or punitive damage, line of cases are directly applicable to the case before the court, the stock redemption case is instructive.

Historically, courts have not hesitated to equitably subordinate former shareholders who have redeemed their stock to the issuing corporation and received debt in its stead. *See Robinson v. Wangemann,* 75 F.2d 756, 757 (5th Cir.1935); *SPM Manufacturing,* 163 B.R. at 415; *Liebowitz v. Columbia Packing Co.,* 56 B.R. 222 (D.Mass.1985), *aff'd* 802 F.2d 439 (1986). A transaction, such as a stock redemption, by which a corporation acquires

its own stock for a sum of money is not a sale. *Robinson,* 75 F.2d at 757. Accordingly, after a stock redemption, the former stockholder, while a creditor, would not stand on equal footing with trade or general creditors should the corporation become bankrupt. *Liebowitz,* 56 B.R. at 224, *citing Matthews Bros. v. Pullen,* 268 F. 827, 828 (1st Cir. 1920). An entity that becomes a "creditor" of the corporation after a stock redemption is not a true creditor in that it never lent money to the corporation. *Robinson,* 75 F.2d at 757. As a stock redemption is merely a means of distributing a proportion of the corporation's assets to the stockholder, the debt received, in the form of a promissory note or otherwise, by the former shareholder does not act to change the underlying character of a transaction, although on the corporation's books, the liability is a debt, not equity. An entity or person that accepts a debt instrument in lieu of cash in a stock redemption transaction assumes the risk that the corporation will remain solvent until the note is due. *Liebowitz,* 56 B.R. at 224. Therefore, despite the absence of impropriety by the former shareholder, it is not inequitable or unfair to subordinate the claims of such a former shareholder to those claims of the general unsecured creditors. *Id.; Weisman v. Goss (In re The Hawaii Corp.),* 694 F.2d 179, 180–81 (9th Cir.1982); *SPM Manufacturing,* 163 B.R. at 415; *Liebowitz,* 56 B.R. at 224.[6]

Envirodyne argues, based on the stock redemption cases discussed above, that it should not be required to show misconduct on the part of the Defendants in order to subordinate them pursuant to § 510(c). Naturally, the Defendants maintain that this court should strictly adhere to the test set forth in *Mobile Steel* since a stock redemption is not the equivalent of a short form merger. It is clear, at least in the Seventh Circuit, when determining the treatment of two classes of unsecured creditors in a plan of reorganization, it is not necessary to determine whether one of the classes has engaged in wrongful conduct. Accordingly, Envirodyne shall not be required to show wrongful

conduct in order to show that its subordination of the Defendants' claims pursuant to § 510(c) was proper. Whether the Plan proposed by Envirodyne and approved by this court properly subordinated the Defendants shall be discussed below.

## II. *Section 510(c) and DGCL § 253*

■■■ The underlying theme of the Bankruptcy Code is equality of distribution. (*Mobile Steel,* 563 F.2d at 698) ("equality of distribution is the underling theme of the Bankruptcy Act"). Bankruptcy courts have a broad range of powers in determining whether to subordinate claims. *Stern–Slegman,* 86 B.R. at 944, *citing Pepper,* 308 U.S. at 303–11, 60 S.Ct. at 243–47. One of these powers, as stated in *Virtual Network* and by Congress in the legislative history of § 510(c), is to develop the meaning of the phrase "under principles of equitable subordination." *Virtual Network,* 98 B.R. at 349. Neither Envirodyne nor the Defendants nor the court could locate any cases discussing the subordination of a creditor class consisting of the nontendering shareholders remaining from a short form merger. Envirodyne argues that it is a reasonable extrapolation of the stock redemption cases to subordinate the nontendering shareholders of a short form merger. A short explanation of a short form merger under Delaware law, codified as DGCL § 253, is necessary prior to considering Envirodyne's arguments.

DGCL Section 253 provides that:

(a) In any case in which at least 90% of the outstanding shares of each class of the stock of a corporation or corporations is owned by another corporation and 1 of the corporations is a corporation of this State and the other or others are corporations of this State, or any other state or states, or the District of Columbia and the laws of the other state or states, or the District permit a corporation of such jurisdiction to merge with a corporation of another jurisdiction, the corporation having such stock ownership may either merge the other corporation or corporations into itself and as-

---

**6.** The court notes that this view is not uniform. In *In re Stern–Slegman–Prins Co.,* 86 B.R. 994, 1000 (Bankr.W.D.Mo.1988), stock redemption debt was not subordinated on equitable grounds because of the lack of misconduct on the part of the claimant.

sume all of its or their obligations, or merge itself, or itself and 1 or more of such other corporations, into 1 of the other corporations by executing, acknowledging and filing, in accordance with s 103 of this title, a certificate of such ownership and merger setting forth a copy of the resolution of its board of directors to so merge and the date of the adoption; provided, however, that in case the parent corporation shall not own all the outstanding stock of all the subsidiary corporations, parties to a merger as aforesaid, the resolution of the board of directors of the parent corporation shall state the terms and conditions of the merger, including the securities, cash, property, or rights to be issued, paid, delivered or granted by the surviving corporation upon surrender of each share of the subsidiary corporation or corporations not owned by the parent corporation. If the parent corporation be not the surviving corporation, the resolution shall include provision for the pro rata issuance of stock of the surviving corporation to the holders of the stock of the parent corporation on surrender of any certificates therefor, and the certificate of ownership and merger shall state that the proposed merger has been approved by a majority of the outstanding stock of the parent corporation entitled to vote thereon at a meeting duly called and held after 20 days' notice of the purpose of the meeting mailed to each such stockholder at his address as it appears on the records of the corporation if the parent corporation is a corporation of this State or state that the proposed merger has been adopted, approved, certified, executed and acknowledged by the parent corporation in accordance with the laws under which it is organized if the parent corporation is not a corporation of this State. A certified copy of the certificate shall be recorded in the office of the recorder of the county in this State in which the registered office of each constituent corporation which is a corporation of this State is located. If the surviving corporation exists under the laws of the District of Columbia or any state or jurisdiction other than this State, subsection (d) of s 252 of this title shall also apply to a merger under this section.

(b) If the surviving corporation is a Delaware corporation, it may change its corporate name by the inclusion of a provision to that effect in the resolution of merger adopted by the directors of the parent corporation and set forth in the certificate of ownership and merger, and upon the effective date of the merger, the name of the corporation shall be so changed.

(c) Subsection (d) of s 251 of this title shall apply to a merger under this section, and subsection (e) of s 251 of this title shall apply to a merger under this section in which the surviving corporation is the subsidiary corporation and is a corporation of this State. References to "agreement of merger" in subsections (d) and (e) of s 251 of this title shall mean for purposes of this subsection the resolution of merger adopted by the board of directors of the parent corporation. Any merger which effects any changes other than those authorized by this section or made applicable by this subsection shall be accomplished under s 251 or s 252 of this title. Section 262 of this title shall not apply to any merger effected under this section, except as provided in subsection (d) of this section.

(d) In the event all of the stock of a subsidiary Delaware corporation party to a merger effected under this section is not owned by the parent corporation immediately prior to the merger, the stockholders of the subsidiary Delaware corporation party to the merger shall have appraisal rights as set forth in s 262 of this title.

(e) A merger may be effected under this section although 1 or more of the corporations parties to the merger is a corporation organized under the laws of a jurisdiction other than 1 of the United States; provided that the laws of such jurisdiction permit a corporation of such jurisdiction to merge with a corporation of another jurisdiction.

This section empowers a parent corporation to unilaterally merge with its subsidiary and to pay the subsidiary's minority shareholders for their shares, provided that the parent owns 90% of the outstanding shares of each class of stock of the subsidiary corporation. Ernest L. Folk, III, Rodman Ward, Jr. and Edward P. Welch, *Folk on the Delaware*

834

General Corporation Law, § 253.1 (3rd ed. 1993 Supp.). The merger becomes effective when a certificate setting forth a copy of the merger resolution by the parent's board and the fact that the parent owns 90% or greater of the subsidiary is properly confirmed. *Id.* In the event the subsidiary is not wholly owned and it is the entity that survives, the resolution of merger must state the terms and conditions of the merger, including the consideration to be paid by the surviving corporation to the minority shareholders upon the surrendering of their shares. *Id.* Barring fraud or breach of fiduciary duty, appraisal under DGCL § 262 is the only remedy available to the minority shareholders. *Id., citing Braasch v. Goldschmidt,* 41 Del.Ch. 519, 199 A.2d 760, 764 (1964). *See also Najjar v. Roland Int'l Corp.,* 387 A.2d 709 (Del.Ch.1978), *aff'd* 407 A.2d 1032 (1979).

The parties in this action do not dispute that DGCL § 253 was complied with and that none of the Defendants asserted their rights of appraisal. In addition, it is not contested that the Defendants are statutory creditors of the Envirodyne, as minority shareholders of Former Envirodyne. The only remaining issue in this action is where in the priority scheme set forth by the Bankruptcy Code should these Defendants be placed.

Envirodyne maintains that while the Defendants hold valid claims against the estate, as shareholders of Former Envirodyne, they are akin to a former shareholder who accepted debt in lieu of cash in a stock redemption transaction. That the Defendants never held Envirodyne stock is irrelevant. Envirodyne contends that, by failing to either assert their appraisal rights or timely redeem their shares after the merger, the Defendants have assumed a position similar to that of an entity that becomes creditor after exchanging its stock for debt in a stock redemption transaction. As those who receive debt in a stock redemption are subordinated to a debtor's general unsecured creditors, so should the Defendants who failed to timely tender their shares after a short form merger. The court concurs. To hold otherwise would allow substance to control over form. At the time the Defendants entered into their relationship with Former Envirodyne, they did not have any guarantees that they would

recover their investment. They invested in Former Envirodyne with the hope of sharing in its future earnings but with the risk that they may lose their investment in the event that the company fails or performs poorly. Contrast this with the position of a general unsecured creditor. When a supplier extends credit, it does so with the reasonable expectation that it will be repaid in due course for the goods or services that it provided. Conversely, regardless of how the company performs, it does not expect to share in any profits. A creditor does not subject itself to the risks of a shareholder.

After a short form merger, shareholders who do not tender their shares become creditors of the new company. The question becomes whether these "creditors" should be treated on a *pari passu* basis with the general unsecured creditors of the new company in the event the new company files a Chapter 11 petition before these "creditors" tender their shares. The Defendants argue that this is precisely the treatment that should be afforded them. The law does not distinguish a creditor by the origins of its claim and neither should this court.

■ However, Envirodyne argues, and the court agrees, that, as a court of equity, the bankruptcy court has an obligation to ensure that all creditors are treated fairly. The fundamental aim of equitable subordination is to undo or offset any inequity in the claim position of a creditor that will produce unfairness to other creditors in terms of bankruptcy results. *Virtual Network,* 98 B.R. at 350, *citing In re Kansas City Journal–Post Co.,* 144 F.2d 791, 800 (8th Cir. 1944). The equitable subordination doctrine focuses on the nature of the bankrupt's estate, not on the conduct of the claimant who may be subordinated. *Virtual Network,* 98 B.R. at 350. The Defendants, although legally creditors, are in essence former equity holders who never took the time to tender their shares. Therefore, they are not entitled to the same distribution as an ordinary creditor in a plan of reorganization. The Defendants never lent money to the corporation nor do they share any other characteristic of an ordinary creditor. They took cer-

tain risks when they purchased the stock of Former Envirodyne. That they became creditors of Envirodyne because they failed to timely tender their shares should not elevate their status to that of an ordinary creditor. Similar to a former shareholder who accepts a promissory note in exchange for its stock, by failing to tender their shares in the three and one-half years between the short form merger and the filing of Envirodyne's bankruptcy case, the Defendants assumed the risk that Envirodyne would remain solvent. *See Liebowitz,* 56 B.R. at 224. When Envirodyne fell into bankruptcy, the Defendants' ability to tender their shares became subject to the provisions of the Bankruptcy Code, including § 510(c).

In deciding to subordinate the Defendants' claims pursuant to § 510(c), the court has noted the similarity between a stock redemption and a short form merger. The court is not persuaded by the Defendants' argument that the stock redemption cases relied upon by Envirodyne were essentially two party transactions between the debtor and the former shareholder. In addition, that each of the former shareholders in the stock redemption cases voluntarily choose to sell their shares back to the issuing corporation is similarly not alluring. Such distinctions endorse form over substance. Although legally creditors, these Defendants are in reality displaced equity holders. While losing their rights as equity holders after the merger, the court cannot ignore the fact that the Defendants' claims arose, initially, because the Defendants choose to become equity holders and assumed the risks of becoming such. That a short form merger changed their status from equity holder to creditor is of no consequence when comparing their rights to the Debtor's general unsecured creditors. As a result, the Defendants shall not be entitled to payment unless and until the general unsecured creditors have been paid in full. After failing to assert their appraisal rights, the Defendants had over three years to tender their shares. It would not be fair or equitable to treat such a class on par with the general unsecured creditors. Therefore, Envirodyne properly subordinated the Defendants' claims pursuant to § 510(c) in the Plan.[7]

## CONCLUSION

The Defendants' motion for summary judgment shall be denied and Envirodyne's cross motion for summary judgement shall be granted. Envirodyne's Plan properly subordinated the claims of the Defendants to those claims of Envirodyne's general unsecured creditors.

The Defendants were equitably subordinated pursuant to the principles and policies of the Bankruptcy Code, not state law.

---

7. That the merger transaction was valid under state law and that the Defendants' are creditors of Envirodyne does not affect this court's decision to equitably subordinate the Defendants.