In re FEINSTEIN FAMILY PARTNERSHIP,
Debtor.

Nationsbank, N.A., a National Banking Association, Plaintiff,

v.

Shari Streit Jansen, Trustee, and Kennedy Funding Group, Defendants.

Bankruptcy No. 96–14294–9P1.
Adversary No. 97–1033.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Aug. 26, 1999.

---

Raymond V. Miller, Kaufman, Miller, Dickstein & Grunspan, P.A., Miami, FL, for plaintiff.

Brian K. Gart, John B. Hutton, Greenberg Traurig, P.A., Ft. Lauderdale, FL, for Kennedy Funding Group.

W. Andrew Clayton, Jr., The Clayton Law Firm, P.A., Sarasota, FL, for Shari Streit Jansen, trustee.

Shari Streit Jansen, Sarasota, FL, trustee.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an aborted Chapter 11 case and the matter under consideration is a dispute between NationsBank, N.A. (Bank) and Kennedy Funding Group (Kennedy Funding). Although the Bank also named Feinstein Family Partnership (Debtor) as a defendant in this adversary proceeding, the only parties who have an interest in the resolution of the Bank's claims in its Complaint are the Bank and Kennedy Funding.

The immediate matter under consideration is a Motion for Summary Judgment filed by Kennedy Funding. Kennedy Funding contends that there are no genuine issues of material fact and that, based on the same, Kennedy Funding is entitled to the entry of a judgment in its favor as a matter of law.

The claims under consideration are set forth in a two-count Amended Complaint filed by the Bank. In Count I, the Bank contends that the Bank has a perfected security interest in road impact fee credits due to the Debtor from the City of Ft. Myers; and that its lien is superior to the lien granted to Kennedy Funding pursuant to an Order entered by this Court approving post-petition DIP financing (Lending Order).

In Count II the Bank sets forth a claim for marshalling. The Bank contends that Kennedy Funding has a senior lien position in the Debtor's real property valued at $25 million; that Kennedy Funding also has a lien on the impact fee credits valued at $5.4 million due to the Debtor from the City of Ft. Myers; and that Kennedy Funding's secured claim can be fully satisfied by liquidating the real property collateral. The Bank requests that this Court apply the doctrine of marshalling by requiring Kennedy Funding to first look to the real property to satisfy its claim and also requests that this Court direct that the Bank's claim be paid immediately from the impact fee credits.

The facts relevant to the issues raised by the Bank are basically without dispute, with one exception to be discussed below, and can be summarized as follows:

Prior to the commencement of the Chapter 11 case, the Bank loaned approximately $2.5 million to the Debtor. The loan was secured by a perfected security interest in road impact fee credits valued at $5.4 million which the City of Ft. Myers owes to the Debtor.

The extensive real property holdings of the Debtor were encumbered by a first mortgage held by the City of Ft. Myers, as Trustee, on behalf of the bondholders under a bond issue which financed the infrastructure needed for the full development of the properties. The Debtor defaulted on the bond issue and was in danger of losing its real estate holdings. On August 3, 1998, after the foreclosure action was commenced by the City, the Debtor sought protection in this Court by filing a Petition under Chapter 11 of the Bankruptcy Code. The Debtor continued its efforts to save the properties, by trying to obtain sufficient funds to pay off the bonded indebtedness through postpetition DIP financing. The Debtor ultimately succeeded and negotiated a loan for $16.2 million with Kennedy Funding. The Debtor filed its Application for approval of the DIP financing which this Court approved by Order entered on May 8, 1997 (Lending Order).

The Lending Order granted the Debtor's Application to borrow $16.4 million on a superpriority basis. The Lending Order also granted a superpriority lien to Kennedy Funding co-equal with the tax lien held by Lee County or any other tax certificate holders. Subparagraph (c) of the Lending Order provides that although the Bank shall retain its first lien on the impact fee credits to secure the repayment of approximately $2.5 million owed by the Debtor to the Bank, Kennedy Funding will occupy a position *pari passu* with the Bank on the

impact fee credit. The Lending Order further recites that the Bank agreed and the Court ordered that the proceeds from the sale of the impact fee credits shall be divided by payment of 60 percent to the Bank and 40 percent to Kennedy Funding until the debt owed to the Bank is satisfied. There is nothing in the Lending Order which required payment of $250,000 from the proceeds of the loan obtained from Kennedy Funding to the Bank. These facts are without dispute.

However, this is where the agreement ends. It is the Bank's contention that it only agreed to Kennedy Funding having a superpriority lien equal in rank with the first lien of the Bank with respect to the impact fee credits because it was agreed that upon closing, the Bank would receive $250,000 from the loan proceeds. The Bank contends that Debtor's counsel unconditionally promised that the Bank would receive this amount upon closing and that Kennedy Funding was aware of this promise before it advanced the loan proceeds to the Debtor. Of course, this proposition is categorically denied by Kennedy Funding which contends that any promise made to the Bank by Debtor's counsel is not binding on Kennedy Funding and that the Lending Order which governs the parties' rights, has no provision for any payment to the Bank from the loan proceeds.

In order to bolster its contention that there are genuine issues of material fact, the Bank further contends the following: (1) Kennedy Funding had a representative at the hearing on April 29, 1999, when Debtor's counsel announced that the Bank will be paid $250,000 out of the loan proceeds, a fact denied by Kennedy Funding; (2) the Bank had an agreement with the Debtor concerning the payment of $250,-000 out of the loan proceeds, a fact admitted by Debtor's counsel but denied by the Debtor; (3) Kennedy Funding consented to and ratified or failed to object to the deal with the Bank, a fact vigorously denied by Kennedy Funding; (4) even if Kennedy Funding did not know of an agreement to pay $250,000 to the Bank, Kennedy Funding violated its standard operating procedures by not inquiring about the use of the loan proceeds.

It appears from a close analysis of the foregoing that the main thrust of the contentions advanced by the Bank in opposing the Motion for Summary Judgment is that Kennedy Funding, by its alleged silence or inaction, either waived any objection to the so-called deal between the Bank and the Debtor or consented to or ratified the deal.

█ Assuming without conceding that this contention is true, based on this record, this Court is satisfied that none of the Bank's contentions raise genuine issues of material fact. This is so because Kennedy Funding was not a party to the agreement between the Debtor and the Bank, if there was one, and had the right to rely on the Lending Order which is totally silent regarding any payments to the Bank at closing. Moreover, more than inaction or silence is required to constitute consent or ratification.

In sum, while there may be disputed facts, none of them are material to the outcome of this proceeding. Based on the material undisputed facts, Kennedy Funding is entitled to judgment on Count I of the Complaint.

As noted earlier, the claim asserted by the Bank in Count I merely seeks a determination of the priority and extent of the liens encumbering the impact fee credits. The Bank does not seek the "equitable subordination" of the lien granted to Kennedy Funding by the Lending Order in this Count. However, in its post-trial submission the Bank relies on the doctrine of equitable subordination to ensure that the superpriority lien of Kennedy Funding is subordinated to the lien of the Bank and satisfied out of the sale proceeds of the impact fee credits after its claim has been satisfied in full.

The Code adopted the principle of equitable subordination by enacting Section 510(c) which authorized the Court to sub-

ordinate for purposes of *distribution,* all or part of an allowed claim to all or part of other allowed claims. (emphasis supplied). While it is unclear from the language of the Section precisely what Congress had in mind in enacting Section 510(c), it is fair to infer from the legislative history that Congress intended courts to develop appropriate principles which might be broader than the principles existing prior to the enactment of Section 510(c). *In re Virtual Network Servs. Corp.,* 902 F.2d 1246 (7th Cir. 1990); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351 (7th Cir.1990).

■ The cases dealing with this subject strongly suggests that the equitable subordination principle applies only in instances when the claim asserted is the unsecured claim sought to be subordinated to the other unsecured claims in the same class. The classic situation involved in the past is a claim which is asserted by insiders where courts either subordinated the claim of insiders for taking advantage of their position *vis a vis* the corporation or found that the claim was not really a valid obligation of the corporation but a capital investment. Courts often failed to make a distinction between a capital contribution by a stockholder or actual bona fide loan. For instance, the case of *Robinson v. Wangemann,* 75 F.2d 756 (5th Cir.1935), involved a claim by former shareholders and raised the question whether the claim asserted involved equity or investment of a bona fide loan.

This inference is further strengthened by reference to distribution in Section 510(c). Although one might contend that this reference may also include a distribution of proceeds of collateral, the cases strongly indicate that the principle was applied only to unsecured claims. *In re Vitreous Steel Prods. Co.,* 911 F.2d 1223 (7th Cir.1990).

While it is true that security interest on mortgage liens have been subordinated to unsecured creditors, but only in instances where the security interest on a mortgage lien was asserted by an insider and not when it was created by arms-length, normal, commercial transactions with a third party, not an insider.

For instance, *Virtual Network, supra,* rejected the proposition that before the court may apply equitable subordination there must be a showing in every instance of inequitable conduct on the part of the creditor who is claiming parity with other unsecured creditors.

The Bank heavily relies on the fact that under *Vitreous* it is unnecessary to show that Kennedy Funding engaged in any misrepresentations of reprehensible unfair conduct. There is no question that this proposition is supported by authorities. *Matter of Envirodyne Industries, Inc.,* 79 F.2d 579 (7th Cir.1996), cert. denied, *Ryckman v. Envirodyne Industries, Inc.,* 519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996); *Matter of Virtual Network Services Corp. supra.*

■ However, there still must be a showing that the conduct of the claimant injured creditors or gave an unfair advantage to the claimant and that the subordination is not inconsistent with any provisions of the Code. *N & D Properties, Inc.,* 799 F.2d 731, citing *In re Mobile Steel,* 563 F.2d 692 (5th Cir.1977).

■ As noted earlier, Kennedy Funding's superpriority claim is based on the Lending Order which was never appealed. The Lending Order represents the law of the case and is binding on all parties of interest, including the Bank. The claim of Kennedy funding is a secured claim and if the Bank suffered injury because of the borrowing order granting an equal status to Kennedy Funding on the impact fee credits with the Bank and caused injury to the Bank as claimed, it was clearly not the doing of Kennedy Funding but was due to the claimed fraud and misrepresentations by Debtor's counsel, the Debtor or both. The Bank's reliance on the equitable subordination principle simply cannot be sus-

tained on this record. This leads to the claim of the Bank set forth in Count II of the Complaint, which claim, in essence, is based on equitable principles.

■ In Count II of the Amended Complaint, the Bank seeks an order directing marshalling of the collateral. This claim is based on the proposition that the Bank was innocently lured into silence and was tricked into consenting to the Lending Order by the conduct of Debtor's counsel and the Debtor. The Bank contends that it should be entitled to be restored to its initial unimpaired first position on the impact fee credits and this can be done without injuring the interest of Kennedy Funding who has more than ample other collateral of a value greatly in excess of the amount owed to Kennedy Funding. The Bank further contends that Kennedy Funding should not be permitted to look to the impact fee credits to satisfy its claim first to the detriment of the Bank's interest.

In opposing the claim of marshalling, Kennedy Funding relies on the case of *In re Clinton Street Food Corp.*, 170 B.R. 216 (S.D.N.Y.1994). In *Clinton* a junior lienor sought to modify a financing order by applying the doctrine of marshalling. It was contended that marshalling would not invalidate the superpriority status granted by the financing order but merely sought to alter the method of repayment of the loans. In rejecting this proposition, the Court pointed out that the financing order which was final cannot be altered in the manner suggested by the junior lienor without impairing the DIP lender's position which was bargained for as a condition for lending the funds to the debtor.

The Bank intimates that *Clinton* should not be applied because in *Clinton* there was no allegation of "bad faith" on the part of the postpetition lender. There is nothing in this record to substantiate bad faith, although it is intimated that Kennedy Funding used its superior bargaining position to exact excessive security for the DIP financing which is somewhat unfair and

improper. Kennedy Funding had no legal obligation to lend anything to the Debtor. It was Kennedy Funding's business judgement to lend money to a Debtor–in–Possession and, considering that lending to a Debtor–in–Possession is far from risk free, it is understandable that it wanted to insure that its position was fully secured.

Based on the foregoing, this Court is constrained to conclude that the claim in Count II is not valid and Kennedy Funding's Motion as it relates to both claims asserted is well taken and should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment be, and the same is hereby, granted in favor of the Defendant, Kennedy Funding, and against the Plaintiff, NationsBank, N.A. A separate final judgment will be entered by this Court.